## EDWARD HEFFRON *versus* WILLIAM GALLUPE.

After the evidence was closed, but before argument and during a temporary adjournment of the Court, one of the jurors called upon the defendant, asked for, received and read in part, a printed copy of the evidence adduced at a former trial of the cause, and formed a conclusion therefrom that the testimony of some of the witnesses at the former trial varied somewhat from that given by them at the latter. The verdict was for the plaintiff for nominal damages, and, on motion of the plaintiff:— *Held*, that the verdict be set aside and a new trial granted, whatever the defendant's motives may have been.

As a general rule, the testimony of a juror as to any irregularity or misconduct of the jury when acting or deliberating as an organized body in the performance of their official duty, is inadmissible on a motion to set aside a verdict.

*Aliter*, as to facts touching his own conduct while separated from his fellows, or as to the acts or declarations of a party to or with him.

ON MOTION.

The verdict having been for the plaintiff, for nominal damages only, the plaintiff filed a motion to set it aside, alleging substantially, that, after the evidence was closed but before argument, and during an adjournment of the Court from evening to morning, the defendant delivered to H. W. Briggs, a member of the jury before which the trial was had, a printed pamphlet purporting to be a report of all the evidence given at a former trial of the cause, for the purpose of influencing the juror; that Briggs received the pamphlet without the authority of the Court, and, without disclosing the fact to the Court, read a portion of it, and disclosed

the contents thereof before the finding of the verdict to the other members of the jury, for the purpose of improperly influencing them in their decision.

In support of the motion, the plaintiff filed the depositions of Briggs and six other jurors.

The defendant's counsel admitted that, without the previous knowledge or solicitation of the defendant, Briggs called at his door in the evening and requested the loan of the printed copy ; that the defendant did not at the time recognize him as a juror, and went to his office and got a copy, and on returning to the door did recognize him as such, and hesitating to give it to him, the juror remarked that it was nothing wrong, or something to that effect, when the defendant delivered the printed testimony to him. The printed document had been constantly referred to in the progress of the trial ; the testimony of several witnesses had been read from it by agreement, as testimony in the latter trial.

The juror Briggs deposed that he received the printed pamphlet from the defendant during the trial, in the evening after the evidence was closed, at the defendant's house ; that he read it in part, and noticed that the testimony of Drs. Brown and Coe, as printed, was somewhat different from their testimony on the stand ; and so stated in the jury room ; that one other juror saw the pamphlet, but did not read it.

*Rowe and Appleton*, for the plaintiff, cited

*Benson* v. *Fish*, 6 Maine, 141 ; *Whitney* v. *Whitman*, 4 Mass., 405 ; *Sargent* v. *Roberts*, 1 Pick., 337 ; *Alger* v. *Thompson*, 1 Allen, 403 ; *Hix* v. *Drury*, 5 Pick., 302 ; *Commonwealth* v. *Robie*, 12 Pick., 519 ; *State* v. *Hascall*, 6 N. H., 352, 363 ; *Perkins* v. *Knight*, 2 N. H., 474 ; *Knight* v. *Freeport*, 13 Mass., 218, 220 ; Co. Litt., 227 ; *Durfee* v. *Eveland*, 8 Barb., 46 ; R. S., c. 122, § 8.

*A. W. Paine*, for the defendant, contended that

It must appear that the misconduct has influenced the jury so as to render it very probable that it affected their verdict ;

and that they have been influenced corruptly. *Shea* v. *Lawrence*, 1 Allen, 167.

If no injury is caused thereby, no interference with the verdict will be allowed. *Tripp* v. *Co. Com's*, 2 Allen, 557; *Parsons* v. *Huff*, 38 Maine, 137; *Newell* v. *Ayer*, 32 Maine, 334.

When it does not affect the impartiality of the jury, the motion will not avail. The *onus* is upon the mover to show the effect affirmatively. *Com.* v. *Roby*, 12 Pick., 520.

It must appear to have been fraudulently done or with a design to influence the jury improperly. *Harriman* v. *Wilkins*, 20 Maine, 93.

Juror's testimony not admissible to sustain the motion. *Chadbourne* v. *Franklin*, 5 Gray, 315; *Hannum* v. *Belchertown*, 19 Pick., 313; *Murdoch* v. *Sumner*, 22 Pick., 156; *Cook* v. *Castner*, 9 Cush., 278; *Folsom* v. *Manchester*, 11 Cush., 337; Graham on New Trials, 111; *Clossin* v. *Smith*, 5 Hill, 560; *B. & W. R. R. Co.* v. *Dana*, 1 Gray, 105; *Dorr* v. *Fenno*, 12 Pick., 525; *Little* v. *Larrabee*, 2 Greenl., 40; 1 Greenl. on Ev., § 252; *State* v. *Freeman*, 5 Conn., 348; *Meade* v. *Smith*, 16 Conn., 346; *Dana* v. *Tucker*, 4 Johns., 487.

KENT, J. — The motion for a new trial, now before us, is based on the following facts, which are undisputed. In the evening after all the evidence, in the trial of the cause between these parties, had been given, and before the arguments commenced, a juryman called at the defendant's house and asked him if he had one of the pamphlets containing the evidence given at a former trial. The defendant said he had one, and gave it to the juryman. The defendant did not at first recognize the applicant as a juror in the case, but did so before he gave him the pamphlet. Defendant hesitated, but the juror remarked that there was nothing wrong, and thereupon the copy was delivered by defendant to the juryman. This document had been used by the counsel, during the trial, for reference, and the testimony given

at the former trial by several witnesses was read by consent therefrom, as testimony in the case on trial. The juryman read and examined it in part, before the verdict was rendered, and formed the conclusion that the testimony of some of the witnesses varied from that given at a former trial as there recorded. He named Dr. Brown and Dr. Coe as two of such witnesses.

The proof of these facts is the testimony of the juror himself. The plaintiff also presents the depositions of several other jurors as to what transpired in the jury room, in reference to this pamphlet, and the statements and discussions thereon. The defendant interposes the objection that all this testimony is inadmissible. We concur with him so far as the testimony of the jurymen, as to what transpired in their deliberations, when acting as a jury, and exclude it from our consideration.

But we know of no rule of law that excludes the testimony of a juror as to facts touching his own conduct or proceedings, when separated from his fellows, or the acts or declarations of a party to or with him, touching the question pending. The rule which excludes the testimony of jurors, as to any irregularity or misconduct of the jury, applies to such acts when the jury is acting or deliberating as an organized body, presided over by their foreman, and performing their official duty. When in that condition, even the misconduct of a single juror, although not participated in by any of his fellows, but entirely disapproved of by them, is protected from investigation or exposure by a litigant seeking to set aside the verdict. We do not intend to say that there may not be cases of such gross misconduct in a jury room that the Court may properly investigate and deal with it as an offence against the pure administration of justice.

The rule, to the extent we have indicated, may be illustrated by the case of an approach made by a party towards a juryman, to influence his decision by direct bribery, or by artful appeals to his interest, passions, or prejudices. Clear-

ly such facts may be proved by a juryman, even if they to some extent implicate himself.

The facts before us show that the evidence had been closed in Court, and neither party could introduce any more, without special leave of the Court. Yet one juryman, out of Court, has placed before him, what was in effect to him, testimony of facts, bearing on the case, not given in open Court.

The theory of our jury trials is, that all parties and witnesses are to be heard in open Court, in the presence and under the direction of the presiding Judge.. The law is extremely tenacious of this cardinal doctrine, and looks with distrust and aversion upon any departure in practice from its strictness. The oath of the juror is to decide according to the law and the evidence given to him — given to him according to the rules of evidence in open Court and with the parties face to face. It surely cannot mean evidence given to a juryman by a party outside of the court room, to be read and pondered upon in secret, before joining his fellows in deliberation on the verdict.

This pamphlet had been legitimately used on the trial. The testimony of witnesses at former trial had been read by consent, but not the testimony of either of the two surgeons named by the juror. His purpose in seeking the possession of this printed document was to compare the testimony given at this trial with the testimony of the same witnesses, contained in the volume given to him.

The legitimate way to show this is by the testimony of a witness who heard him testify. But it is often proved, by consent, by reading the minutes of testimony taken at the time by the Court or counsel.

It is a species of evidence which particularly requires explanation and elucidation by the Court, — aided by the arguments of counsel. It is not in itself evidence of the facts testified to in a former trial, but simply evidence to be considered only as it affects the credibility of the witness, in his, then, present testimony. But often facts are stated

as true in the former testimony, which are ignored or not remembered in the subsequent examination. But the jury, in the second trial, cannot legitimately consider such facts as established by the first testimony. It often requires great care and effort on the part of the Judge to make the jury understand this distinction.

It may be assumed that the report of evidence in the pamphlet was substantially correct. But the essential wrong or injury is, that illegal testimony, calculated to affect the juror's mind, has been read and considered by him, as facts proved in the case. They might be true and legitimate testimony, if offered in the regular course. But the juryman had no right to know them, when obtained or communicated in this manner. The other party had a right to object to the admission of the testimony, if regularly offered. The printed document in itself was not evidence. If admitted, the counsel had a right to comment, and to show, if he could, in his argument, that there was no material discrepancy between the evidence before given and that then given by the witness. But here the juryman was left to form his conclusions from a source unknown to one party, and of course without any explanation or argument from that side.

It was a violation of the juryman's obligations to seek for the document. It was as clearly an unjustifiable act for the defendant to furnish it to him, knowing him to be a juror.

We are not prepared to say that the same result would not have followed, if the defendant had been ignorant, of the fact that the applicant was a juror in the case, and the juror unconscious of any impropriety in making the request. The mischief is the same, whatever the motives. Illegal testimony has been brought before the juror's mind improperly. If the juror was acting in the honest belief that it was proper to seek for evidence outside of the court-house, it was as probable that it would illegally affect his mind and judgment, as if he was consciously acting wrong

Heffron *v.* Gallupe.

So, if the defendant saw nothing improper and intended no wrong, yet he did in fact put evidence into the case which certainly, so far as one juryman was concerned, was entirely illegal and improper. The motives and intentions are of less consequence in this matter, than the result of their actions.

The manifest result here was, that the juror's mind had received and accepted for legitimate evidence, what was not such, and had acted upon the belief that certain witnesses had varied in their testimony. The defendant had voluntarily furnished the document which had produced this effect illegitimately.

There are cases where the Court will not stop to inquire whether the juryman was actually influenced or not, but will set aside the verdict upon evidence of any tampering or attempted tampering with the members of the jury. There are cases, and we wish there were more of them, where conscientious jurors have informed the Court of improper advances made, directly or indirectly, by interested parties; expressing their own indignation at the insult and their contempt of the authors. In these cases, and in others like them, the Court, in its discretion, will deprive a party of his verdict as a punishment for the attempt to corrupt the fountain of justice. We wish it to be understood that the Court is not insensible to its duty in this behalf, but will hold parties strictly accountable for their misconduct towards jurors. And we deem it such misconduct, not merely when direct bribery is attempted, but when jurors are approached with the design to forestall their judgments, by statements of what are alleged to be facts, although not testified to, or with appeals calculated to awaken prejudice, partiality or favor. We fear that many verdicts have been influenced by such artful appeals to unsuspecting and unconscious jurors. The statute, R. S., c. 122, §§ 6, 7, 8, expresses the views of the Legislature as in accordance with this opinion.

The evidence in this case does not disclose any seeking out of the jurors by the defendant. The juror applied to him, and he gave him, at his request, the pamphlet. He, through his counsel, now admits that it was an improper act, and one which, if he had taken a moment's time to reflect, he would not have then done. But he did it, and he must abide the consequences of his hasty act.

*Motion sustained. — New trial granted.*

APPLETON, C. J., WALTON, BARROWS and DANFORTH, JJ., concurred.