ANSON B. BOWLER *vs.* INHABITANTS OF WASHINGTON.

*New trial for misconduct of juror.*

While an action against a town to recover damages for an injury occasioned by a defect in a highway is on trial, it is gross misconduct for one of the jurymen engaged in trying the case to visit the place where the accident occurred; to hold conversations with the inhabitants as to the condition of the road, where such injury was received, and of the changes since made in it, and with their aid to make measurements of the same.

When the juryman so misconducting testifies that what he then and there saw and heard had great influence upon him in forming his opinion, it is good cause for setting the verdict aside.

So, if he communicated to members of his panel what he saw and heard, who testify that they were influenced by what was thus communicated in forming their opinion of the merits of the cause.

So, when the inhabitants, while the cause is on trial, hold conversations with one of the panel trying it, in relation to the merits of the case and calculated to influence his judgment, well knowing him to be one of such panel.

MOTION FOR A NEW TRIAL on the ground of the misconduct of a juror. This was an action to recover for injuries sustained by the plaintiff being thrown from his wagon by its striking a rock which

he claimed projected into and so obstructed a way, which the defendants were bound to keep in repair, as to make it defective. The juror visited the *locus in quo* and what there transpired is fully stated in the opinion of the court.

The defendants had a verdict and the plaintiff filed this motion to set it aside.

*Gould & Moore*, and *H. Bliss, jr.*, for the plaintiff.

*A. G. Jewett* and *L. M. Staples*, for the defendants. *Brown v. Moran*, 42 Maine, 144.

APPLETON, C. J. This is an action to recover damages for an injury sustained by the plaintiff through a defect in a highway of the defendant town. A verdict was rendered against him, which he moves to set aside for the misconduct of one of the jury.

Washington Robbins, the juryman in question, testifies that while the cause was on trial and during an adjournment, he went to the defendant town, distant some twenty miles from the place of trial; that he was at the place where the accident was said to have happened; that after he got there two inhabitants of the defendant town came along and stopped; that he was standing looking at the premises; that they spoke to him, making talk about the rock and road; that he inquired of them if this was the place where the accident happened; that they said it was; that they were talking about the rock and the road all the time he was there; that the substance of the conversation was that the road was wide enough and passable for anybody at the time of the accident; that they showed him where the rock, that was taken out, lay at the time of the accident; that if it laid where they said it did, no part of it was any obstruction to the road; that he could not tell at that time from the appearance of the face of the earth how far the innermost point of the rock projected into the road; that he with the assistance of these men, made admeasurements; that they told him they were familiar with the road before the accident;

and that after making his examination and admeasurements he went home with one of them and dined with him; that he was influenced in the decision of the cause by what he there saw and heard; and that he stated the same, before the argument, to one of his fellows, as well as in the jury room. George F. Ayers, to whom these statements were made, testifies that they had great influence over his mind in the decision of the case.

The jury were sworn in all causes betwixt party and party committed to them to give a true verdict therein, according to the law and the evidence given them. R. S.; c. 82, § 68. It is apparent that two of the jury did not give a verdict according to the evidence given, but that their judgment was based upon evidence not given them; upon the unsworn statements of two of the citizens of Washington, and upon hearsay statements. "The court," observes Steele, J., in *McDaniels v. McDaniels*, 40 Vermont, 363, "set the verdict aside, not as a punishment to any one, but in justice to themselves as well as to the defendant, that the trial may be conducted fairly so that the verdict, when finally rendered, may be entitled to the respect of both parties and the confidence of the court, as the result of a trial substantially according to law, and upon the evidence in court." *Bradbury v. Cony, ante,* page 223. It would be difficult to imagine a case of greater misconduct than the juryman details in his testimony of what he saw, heard and did, and for which he is justly amenable to punishment. One of the men, Hibbert, who had the conversation with the juryman, knew that he was a member of the panel before which the cause was being tried. If one inhabitant can be allowed to hold conversations with a juryman, making statements material and relevant to the cause, so may others, and there will be no limit to such interference. The town must be held responsible for the wrong doing of its citizens as a party is for his own misconduct. *Heffron v. Gallupe,* 55 Maine, 563.

It is admitted that neither the plaintiff nor his counsel had any knowledge of the facts proved till after the trial.

There was no occasion for the report of the whole evidence.

The question is not whether the jury erred in weighing evidence. The ground of objection is the gross misconduct of one of the jury, and the effect which such misconduct did have, or might have had, on the verdict. *Motion sustained.*

CUTTING, DICKERSON, DANFORTH, VIRGIN and PETERS, JJ., concurred.