**Julie and Raymond MARR**

v.

**Richard SHORES.**

Supreme Judicial Court of Maine.

Argued June 7, 1985.

Decided July 16, 1985.

---

Daviau, Jabar & Batten, Joseph M. Jabar (orally), Waterville, for plaintiff.

Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Phillip E. Johnson (orally), Augusta, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, WATHEN and GLASSMAN, JJ.

VIOLETTE, Justice.

This action arises out of an automobile accident involving the plaintiff Julie Marr and the defendant. After a trial in the Superior Court, Somerset County, the jury awarded Julie Marr $3,180. The plaintiffs moved for a new trial on the grounds of inadequate damages and juror misconduct. The presiding justice denied the motion insofar as it relied upon juror misconduct, but ruled that he would order a new trial based upon inadequate damages unless the defendant accepted an addition to the damages of $5,020. The defendant agreed to the additur. The plaintiffs filed an appeal challenging the denial of their motion for a new trial on the ground of juror misconduct. The defendant filed a cross-appeal challenging the determination that the amount of damages awarded by the jury was inadequate. We affirm the judgment in all respects.

I.

On November 2, 1981 a vehicle operated by Richard Shores struck a vehicle containing Julie Marr. Shores conceded that his

negligence caused the accident. The only issue at trial was the amount of damages.

Julie Marr sought both special and general damages based upon the personal injuries she allegedly suffered in this accident. Raymond Marr, her husband, asserted a claim for loss of consortium. The jury awarded $3,180 to Julie Marr and no damages to Raymond Marr.

The Marrs moved for a new trial, asserting that the damages assessed by the jury were inadequate. They later expanded the basis for this motion to include an allegation of juror misconduct. In support of their allegation of juror misconduct, the Marrs submitted two affidavits, one by Richard G. Therriault, the foreman of the jury, and the other by Joseph M. Jabar, their attorney, based upon his conversation with Dennis Smith, a juror. These affidavits stated, *inter alia*, that, during deliberations and before a verdict was reached, a juror told the rest of the jury that the Marrs had not paid all the medical expenses asserted by Julie Marr at trial because Raymond Marr had health insurance coverage through his employer, the Scott Paper Company.

The presiding justice refused to consider the affidavits submitted by the Marrs and denied the motion for a new trial on the ground of juror misconduct. The justice then found, as a matter of law, that the damages assessed by the jury were inadequate, and ruled that he would order a new trial unless Shores accepted an addition to the damages of $5,020. Shores agreed to the additur.

The Marrs then filed this appeal from the denial of their motion for a new trial on the basis of juror misconduct. Shores filed a cross-appeal challenging the determination that the amount of damages awarded by the jury was inadequate.

## II.

██ M.R.Evid. 606(b) provides:

**Inquiry into validity of verdict or indictment.** Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received.

Rule 606(b) codifies the "settled doctrine of this State," articulated in *Patterson v. Rossignol*, 245 A.2d 852, 856 (Me.1968), that evidence of statements by jurors may not be used to demonstrate "any impropriety in the conduct of the jury in the jury room," but may be offered only to show "external misconduct of individual jurors" or "the exertion of outside influence" upon the jury. *Cyr v. Michaud*, 454 A.2d 1376, 1383 n. 3 (Me.1983); *see* M.R.Evid. 606 advisers' note; Field & Murray, *Maine Evidence* § 606.2, at 133 (1976).

In the case at bar, the plaintiffs sought to introduce affidavits based upon statements made by two jurors to show that a fellow juror disclosed to the jury during deliberations his personal knowledge concerning Raymond Marr's health insurance coverage. In other words, the plaintiffs wanted to prove what a juror said during deliberations to support their allegation of juror misconduct. The plaintiffs' goal is contrary to our "settled" rule that "[e]vidence of what is said by jurors while deliberating upon a case will not be considered by the court to set aside the verdict." *Patterson*, 245 A.2d at 856 (citing *Trafton v. Pitts*, 73 Me. 408, 409–10 (1882)).

The plaintiffs nevertheless insist that the presiding justice should have considered their affidavits. According to the plain-

tiffs, the affidavits are admissible under Rule 606(b) because they demonstrate that "extraneous prejudicial information was improperly brought to the jury's attention." The plaintiffs apparently construe "extraneous" merely to refer to information outside that which the jury may properly consider in reaching a verdict.

■ The plaintiffs' position is unpersuasive. As we observed above, Rule 606(b) reflects Maine law as enunciated in *Patterson v. Rossignol.* In light of that law, we can interpret "extraneous" only to refer to information introduced to the jury from outside the normal deliberative process. Thus, as we stated in *Patterson,* 245 A.2d at 856, juror testimony can be received to show that the jury has been improperly exposed to an external source of information such as a book or a pamphlet, *Dongo v. Banks,* 448 A.2d 885, 888–89 (Me.1982) (dictionary brought into jury room); *Simmons v. State,* 222 A.2d 366, 367 (Me.1966) (real estate appraisal book brought into jury room); *Heffron v. Gallupe,* 55 Me. 563, 565–66 (1868) (pamphlet containing evidence from former trial brought into jury room), or to show an independent investigation of a fact bearing upon the dispute by a juror during trial, *Driscoll v. Gatcomb,* 112 Me. 289, 290, 92 A. 39, 39 (1914) (private, unauthorized view by juror of subject of litigation); *Winslow v. Morrill,* 68 Me. 362, 362–63 (1878) (private, unauthorized investigation by juror of pollution caused by party's shop); *Bowler v. Inhabitants of Washington,* 62 Me. 302, 303–04 (1873) (private, unauthorized investigation by juror of road defect), but not to show that a juror who brought with him into the trial personal knowledge of a particular fact that could influence the jury's verdict discussed that personal knowledge with his fellow jurors during deliberations, *Shepherd v. Inhabitants of Camden,* 82 Me. 535, 535–36, 537, 20 A. 91, 91–92 (1890) (juror discussed during deliberations his personal knowledge acquired before the trial regarding the plaintiff's realty). The mere communication of personal knowledge by a juror to his fellow jurors during deliberations, however improper that communication may be, is part of the deliberative process itself, and therefore not "extraneous." *See* J. Wigmore, *Evidence in Trials at Common Law* § 2354, at 712 (McNaughton ed. 1961) ("The communication of a juror's personal knowledge during retirement is of course improper.... Nevertheless, his use and his fellows' use of that information during their deliberations is rather to be regarded as affecting the grounds of their verdict, and thus [may not be proved through the statement of a juror].").

■ We repeat the policy considerations that support the rule prohibiting the use of juror testimony concerning what transpired during deliberations to impeach the verdict: (1) the need for stability of verdicts; (2) the need to conclude litigation; (3) the need to protect jurors in their communications to fellow jurors made in the confidence of secrecy of the jury room; (4) the need to save jurors harmless from tampering and harassment by disappointed litigants; (5) the need to foreclose jurors from abetting the setting aside of verdicts to which they may have agreed reluctantly in the first place or about which they may in the light of subsequent developments have doubts or a change of attitude.

*Cyr,* 454 A.2d at 1383 (quoting *Patterson,* 245 A.2d at 857). To allow the use of evidence of a juror's statement to show the communication by a juror to the rest of the jury during deliberations of personal knowledge that the juror brought into the trial with him, however improper that communication might be, would open virtually every verdict to subsequent attack by disappointed litigants and defeat the policy goals listed above. *See Cyr,* 454 A.2d at 1383–84. The appropriate time to explore the personal knowledge of the individual jurors is during voir dire.

■ The presiding justice did not err by refusing to consider the affidavits submitted by the plaintiffs. Because there was no other evidence of juror misconduct,

the motion for a new trial on that ground was properly denied.

### III.

■ As a general rule, a party who accepts an addition to or reduction of the damages awarded by the jury in order to avoid a new trial under M.R.Civ.P. 59(a) may not appeal from the judgment thus entered against him. *Deans v. Eastern Maine Medical Center*, 454 A.2d 835, 836–37 (Me.1983). In *Deans*, however, we raised without deciding the issue of whether this general rule should extend to cross-appeals as well as appeals. *Id.* at 837. In the leading case of *Plesko v. Milwaukee*, which we cited in *Deans*, the Wisconsin Supreme Court gave the following reasons for allowing a plaintiff to challenge a remittitur through a cross-appeal:

> The objective underlying the recommended procedure for granting an option to accept judgment for a reduced amount of damages in lieu of having a new trial, where the damages awarded by the jury are determined by the trial court to be excessive, is to avoid the delay and expense of an appeal or a new trial. In most situations, it is likely that the party will accept judgment for such reduced damages rather than undergo the expense, delay, and uncertainty of result of an appeal or new trial. Nevertheless, if a party found liable to pay damages appeals the judgment resulting from the other party's accepting such reduced damages, this objective has been negatived. When plaintiff is forced to undergo an appeal by the action of an opposing party, after plaintiff has accepted judgment for such reduced damages, it seems unfair to prevent his having a review of the trial court's determination leading to the reduction of damages, especially if plaintiff has accepted the same only to avoid the delay and expense attending an appeal. Furthermore, the new rule herein announced may to some extent discourage appeals by the party held liable because of the possibility that the party who has accepted judgment for the reduced damages may prevail on his motion for review and have the jury's verdict reinstated.

19 Wis.2d 210, 220, 120 N.W.2d 130, 135 (1963).

■ We concur with the analysis of the Wisconsin Supreme Court. For the above quoted reasons, which we find equally applicable when a defendant agrees to an additur, we now adopt a "cross-appeal" exception to the general rule we articulated in *Deans*. We will therefore consider the defendant's cross-appeal challenging the addition to the damages in the case before us, despite the fact that he agreed to the additur in the Superior Court.

The defendant's argument on cross-appeal is that the trial court should not have disturbed the jury verdict in the case at bar. According to the defendant, the jury's decision to award Julie Marr $3,180 as the full measure of damages appropriate in this case has rational support in the record. The defendant concludes that the presiding justice should have simply denied the plaintiffs' motion for a new trial on the ground of inadequate damages.

■ We review the ruling of the presiding justice on a motion for a new trial on the ground of inadequate damages for abuse of discretion only. *Stubbs v. Bartlett*, 478 A.2d 690, 692 (Me.1984); *Chenell v. Westbrook College*, 324 A.2d 735, 737 (Me.1974). "[T]he justice before whom an action has been tried is in a far better position than an appellate court to know whether in the light of his observations at the trial the damages awarded by the jury were so wholly inconsistent with the proof as to reflect some bias, prejudice or improper influence on the part of the jury or to support the conclusion that the verdict was the result of some mistake of fact or law on their part." *Mandarelli v. McGovern*, 393 A.2d 533, 535 (Me.1978). "The evidence is viewed in the light most favorable to the nonmoving party, *see Binette v. Deane*, 391 A.2d 811, 813 (Me.1978), and we defer to the jury on issues of credibility,

*see Cope v. Sevigny,* 289 A.2d 682, 685 (Me.1972)." *Stubbs* 478 A.2d at 692; *Chenell,* 324 A.2d at 737.

 Viewing the evidence in the light most favorable to the defendant, we discern the following relevant facts. The plaintiffs introduced at trial bills totaling $6,118.62 for medical treatment of Julie Marr's neck, shoulder and back between November 3, 1981 (the accident occurred on November 2) and November 29, 1983.[1] The defendant stipulated that these bills were fair and reasonable in regard to the treatment rendered, but disputed causation. The expert medical testimony presented by the plaintiffs linked Julie Marr's neck, shoulder and back problems after November 2, 1981 to the automobile accident involving the defendant. Although the defendant revealed prior medical problems of Julie Marr involving her back, there was no evidence that the medical expenses incurred by Julie Marr between November 3, 1981 and November 29, 1983 were related to a pre-existing condition and not to injuries she sustained in the automobile accident of November 2, 1981. Furthermore, the testimony of the defendant's expert witness, Dr. Eisengart, was not inconsistent with the plaintiffs' claim that the medical expenses in question were attributable to the November 2 accident. In addition, there was unrefuted evidence of some lost earnings due to the back problems Julie Marr had between November of 1981 and November of 1983.

In light of this evidence, it was not an abuse of discretion for the presiding justice to conclude that the $3,180 awarded by the jury was inadequate as a matter of law, and to order the defendant either to accept

an addition of $5,020 to the damages or to undergo a new trial. *See Chenell,* 324 A.2d at 737–38.[2] We find no error in the justice's ruling on the plaintiffs' motion for a new trial on the ground of inadequate damages.

The entry is:

Judgment affirmed.

All concurring.

---

1. The plaintiffs assert that Julie Marr's total medical expenses were $6,740, while the defendant contends that the medical bills offered at trial amounted to $5,004.69. The trial exhibits transmitted with the record on appeal include medical bills totalling $6,118.62.

2. We observe that, unlike *Chenell,* there is no question in this case as to whether the inadequate verdict reflects a compromise by the jury on the issue of liability. In *Chenell,* because the

circumstances did demonstrate such a compromise by the jury, the presiding justice properly ordered a new trial without giving the defendant the option of accepting an addition to the damages awarded by the jury. 324 A.2d at 738–39; *see* 2 Field, McKusick & Wroth, *Maine Civil Practice* § 59.2, at 61 (2d ed. 1970). As we noted earlier, the defendant admitted liability in the case at bar.