STATE of Maine

v.

Jeffrey ROYAL.

Supreme Judicial Court of Maine.

Submitted on Briefs Nov. 1, 1990.
Decided Dec. 14, 1990.

Mary Tousignant, Dist. Atty., Anne Jordan, Jeffrey Moskowitz, Asst. Dist. Attys., Alfred, for plaintiff.

Christopher Dilworth, Dilworth & True, Windham, for defendant.

Before McKUSICK, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and BRODY, JJ.

BRODY, Justice.

Jeffrey Royal appeals from his criminal convictions challenging the denial by the Superior Court (York County, *Bradford, J.*) of his two motions for a new trial. Royal contends that two incidents of juror misconduct prejudiced the jury's verdicts against him. We vacate the court's order on the first motion and remand the case for rehearing. On Royal's appeal of the denial of his second motion for a new trial, we affirm.

Royal was indicted on charges of robbery, 17–A M.R.S.A. § 651 (1983), aggravated assault, 17–A M.R.S.A. § 208 (1983), and kidnapping, 17–A M.R.S.A. § 301 (1983), in connection with an incident in which he and three other defendants abducted a convenience store clerk in Sanford, beat him, bound his hands, feet and mouth with duct tape, took $180 from his pocket, then transported him to a point on Route 1 north of Monticello where they left him on the side of the road in a snowstorm. Royal was tried separately from his co-defendants. On March 16, 1990, the jury returned guilty verdicts against Royal on all three charges.

On March 30, 1990, before judgments of conviction were entered, the presiding justice summoned the parties into his chambers. He informed them that he had been contacted by one of the jurors, Holly Jean Labelle, who told him that another juror, Janet Milbury, may have acquired external information about the case during trial and that she may have shared this information with the other jurors. The justice told the parties that he would hold an immediate hearing to determine whether Milbury "[made] any statement during the trial that would indicate that she had personal knowledge ... that was not disclosed during voir dire" and whether this knowledge influenced the other jurors. The justice indicated that he would entertain defendant's

motion for a new trial depending on what was learned during the hearing. The justice then proceeded to interview Juror Labelle and allowed the prosecution and defense to ask their own questions. The justice did not interview Milbury, or any of the other jurors, and denied Royal's request that Milbury be interviewed.

Labelle stated that three days after the verdicts were entered, Milbury told Labelle and others present that she "did not feel guilty one bit about what our verdict was [in the Royal case] because they did it." Labelle reported that Milbury explained that she works with someone who knows one of Royal's co-defendants and that person told her that the co-defendant had admitted everything. Labelle did not know when Milbury became aware of this information. Labelle was not aware of any comments made by Milbury to the other jurors. She stated, however, that it was her "impression that [Milbury] had known something all along." Despite Labelle's impression, the presiding justice found "no indication by anything that Janet Milbury is alleged to have said ... that she had heard this before the jury reached its verdict." The justice concluded that, taken as a whole, Labelle's testimony presented an insufficient basis for granting Royal's motion for a new trial.

The Maine [1] and federal [2] constitutions guarantee that the accused shall have a right to a fair and impartial jury trial in all criminal prosecutions. To be valid, verdicts in criminal cases must be the result of honest deliberations, absolutely free from juror prejudice or bias. *Bennett v. State,* 161 Me. 489, 493, 214 A.2d 667, 671 (1965). Although the content of jury deliberations is protected from scrutiny, objective irregularities, such as information acquired by a juror during trial through unauthorized communications, can be shown by the de-

---

**1.** Article I, section 6 provides:
   In all criminal prosecutions, the accused shall have a right ... [t]o have a speedy, public and impartial trial ... by a jury of the vicinity. Me. Const. art. I, § 6.

**2.** The sixth amendment to the U.S. Constitution provides:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed ...

U.S. Const. amend. VI.

fendant as an indication that a verdict is invalid. *Patterson v. Rossignol*, 245 A.2d 852, 856 (Me.1968); M.R.Evid. 606(b).[3] Once the defendant has shown that a juror was subjected to extraneous information, a presumption of prejudice is established and the burden of proof shifts to the State which must demonstrate by clear and convincing evidence that the information did not prejudice the case. *State v. Kelley*, 357 A.2d 890, 898–99 (Me.1976); *State v. Tibbetts*, 299 A.2d 883, 885 (Me.1973). This court reviews the trial court's finding regarding the prejudicial effect of extraneous information only for clear error and will overturn the court's denial of a motion for a new trial only if there is no competent evidence to support it. *Lewisohn v. State*, 433 A.2d 351, 354 (Me.1981).

▮ Labelle alerted the court to a potential juror bias problem when she informed the presiding justice that Milbury may have acquired external information about the case during trial and that she may have shared this information with the other jurors. This created an issue of prejudice. Royal was prevented by the court's ruling from producing evidence which might have established a presumption of prejudice. Labelle's testimony alone is insufficient to establish when Milbury learned of the extraneous admission by one of Royal's co-defendants and whether she shared her knowledge with other members of the jury. Only Milbury is capable of providing this information accurately. Without testimony from Milbury the record is without competent evidence to show whether Milbury's vote was tainted by extraneous information and, if so, the extent to which the taint had been spread to other members of the jury. The record clearly establishes that the court should not have denied Royal's request that Milbury be interviewed. We find that the failure to interview Milbury rises to the level of a procedural error

necessary to overturn the court's denial of Royal's motion for a new trial. Accordingly, we vacate the court's order and remand the case for rehearing on Royal's first motion for a new trial. At the hearing, the presiding justice should interview Janet Milbury to determine when she acquired the information, whether it was before, during or subsequent to the initial voir dire, what impact it had upon her deliberations if, in fact, she acquired it prior to the verdict, whether she shared it with other members of the jury and, if so, when.

▮ Royal's second motion involved a report that one of the jurors, Theodore Reese, had smuggled duct tape into the jury room and performed an experiment with it by wrapping it around his wrists and leaving it there for 15 minutes before removing it to see if it left a residue. The victim had been bound by duct tape, and there was some testimony at trial about the presence of tape residue on the victim's skin. The presiding justice summoned Reese for an interview and thoroughly questioned him about the incident. After carefully weighing the probability of prejudice, the presiding justice concluded that Reese's experiment did not have a prejudicial impact upon the jury's verdict and denied Royal's second motion for a new trial. Because the trial court's finding is supported by competent evidence in the record, we affirm. *Lewisohn v. State*, 433 A.2d at 354.

The entry is:

Order denying defendant's first motion for a new trial vacated. Order denying defendant's second motion for a new trial affirmed.

All concurring.

---

**3.** M.R.Evid. 606(b) provides:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indict-

ment or concerning his mental process in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.