STATE of Maine

v.

Joel K. FULLER.

Supreme Judicial Court of Maine.

Argued Oct. 6, 1994.

Decided Dec. 12, 1994.

Leanne Robbin (orally), Asst. Atty. Gen., State House, Augusta, for State.

John E. Nale (orally), Nale & Nale, Waterville, for defendant.

Before WATHEN, C.J., and GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

CLIFFORD, Justice.

Joel K. Fuller appeals from the order entered in the Superior Court (Waldo County, *Kravchuk, J.*) denying his motion for reconsideration of the denial of his motion for a new trial following his conviction for murder, 17–A M.R.S.A. § 201(1)(A) (1983). He contends that jurors' use of written notes during jury deliberations entitles him to a new trial, or, in the alternative, that he is entitled to an evidentiary hearing to determine the extent of prejudice he suffered from the use of the notes by the jurors. We find no error or abuse of discretion and affirm the judgment.

Fuller's trial took eight days, and the jury returned a verdict after thirteen hours of deliberations. Several days later, an article appeared in the *Waldo Independent* discussing the deliberations of the Fuller jury. The article stated,

"We decided to go over each and every testimony and each and every juror could say what they felt about that testimony," explained one of the jurors. "Every witness was categorized as credible or not. Then we took the credible witnesses and looked at them."

One of the jurors had written down a brief description of each of the witnesses during recess and another had followed a similar process at home each night. That

gave the jury the list they needed to work from and they began the laborious task of analyzing the testimony of each witness.

Shortly thereafter, Fuller made a motion for a new trial pursuant to M.R.Crim.P. 33 based on three issues. Only Fuller's allegation that he was deprived of his right to a fair trial because "at least two jurors took notes during trial recesses and at the end of each trial day, which notes were taken into jury deliberations and used and relied upon during jury deliberations," remains an issue in this appeal.

In support of his motion, Fuller attached an affidavit and a portion of the Superior Court Traverse Juror Handbook. The affidavit provided that the affiant had read two newspaper articles reporting that jurors had taken notes during the trial recesses and at the end of each day, and that he had spoken with the authors of both articles and they confirmed that they were told by jurors that two of them had taken notes and the jury had relied on them. The Juror handbook provides that "[j]urors are not permitted to take notes on the trial."

While the motion was pending, one of the jurors called the court and left a message for the trial court that he wanted to speak about something he needed "to get off his chest." After contacting the attorneys and using a speaker phone, the trial court returned the telephone call with the attorneys and a court reporter present. The juror admitted that he was one of the jurors who took notes, and said:

> In reference to [the note-taking], I just wanted to mention, it was my understanding, and I believe others, that the note-taking was not allowed during the trial itself while testimony was being given, and that was my understanding of the statement anyway. And I did want to say that, let's see—yes, so it would not distract us. Okay? Now in reference to the note-taking in the jury room, I just wanted you to be aware that any notes that I personally took, which were very few—and I know of one other person that did—was notes just to put into my mind, for example, a name of a witness or someone who was mentioned. I needed to write it down so I wouldn't forget it. And then, when I got home, in reference to the evening notes, again, to just orient my mind what was going on—I mean, the lawyers had their own notes. We had nothing to go by. So for my own personal self, I needed to just write down a particular name so I wouldn't forget, you know, who it correlated with. And I just want to mention that. I don't know if it's of any importance.

> I think Fuller got a fair trial. I don't think anything that went on in that jury room took away from that.

The trial court entered an order denying Fuller's motion for a new trial. The court noted that it is the custom in Maine to not allow jurors to take notes but that such note-taking is not illegal. The court found that there was no argument made that the note-taking resulted in any extraneous or prejudicial information coming before the jury. The court also relied on M.R.Evid. 606(b)'s severe restriction on examining the deliberative process of a jury.

In his motion for reconsideration in which he requested an evidentiary hearing, Fuller contended that the mere taking and using of the notes during deliberations required that he be granted a new trial, regardless of the effect they had. Fuller also contended that the telephone conference with the juror turned his motion into an evidentiary hearing and he should have been entitled to cross-examine the juror and present other witnesses. Fuller further argued that if the court were to deny his request for an evidentiary hearing, then it should delay ruling on his motion for a new trial in order that he submit evidence by deposition, affidavits, and written statements.

In denying Fuller's motion for reconsideration and request for an evidentiary hearing, the court concluded that an evidentiary hearing was not needed because Fuller had not alleged that anything extraneous to the trial had come in through the notes. The court found that even if Fuller could prove the jurors had taken notes and relied on them during deliberations, that would not be sufficient to warrant a new trial. By themselves, notes containing names of witnesses and summaries of their testimony were insuffi-

cient to merit an evidentiary hearing for a new trial. Fuller's appeal to this court followed.

## I.

■ Maine follows the common law practice of not allowing jurors to take notes. *See State v. Carey,* 290 A.2d 839, 841 (Me.1972). Fuller contends that note-taking and the use of notes by the jurors constitutes misconduct and creates the reasonable possibility that he was prejudiced. There is little support for Fuller's contention that a jury's taking and relying on notes constitute such prejudice as to warrant a new trial. *See State v. Jackson,* 201 Kan. 795, 443 P.2d 279, 282–83 (1968) (taking notes by jurors does not result in peremptory grant of new trial without a showing of prejudice to substantial rights); *see also State v. Cubano,* 203 Conn. 81, 523 A.2d 495, 500 (1987) (test for whether juror misconduct merits new trial is whether misconduct prejudiced defendant to extent that defendant has not received fair trial). There is no Maine statute prohibiting juror note-taking, and we have recognized that "[b]y the great weight of authority, the taking of notes by jurors is not illegal." *Martin v. Atherton,* 151 Me. 108, 112, 116 A.2d 629 (1955).

Although the jurors in this case took notes *outside* the courtroom and not in the presence of the parties or pursuant to the trial court's permission and instructions, there is no allegation, much less any showing, that the notes resulted in any prejudice or contained any information not provided during the trial. Thus, the fact that notes were taken is not in and of itself sufficient to require the court to grant a new trial. *See Carey,* 290 A.2d at 841).[1]

## II.

Fuller further contends that he was entitled to an evidentiary hearing to determine whether the jury was contaminated by the use of the written notes. He seeks to inquire into the content of the notes and the extent to which they were used.

■ Inquiry into the validity of a jury verdict is not permitted except in very limited circumstances. *See, e.g., Driscoll v. Gatcomb,* 112 Me. 289, 290, 92 A. 39 (1914) (juror may testify to facts bearing on question of existence of disturbing influence, but not as to how far the influence operated on his mind). This rule is codified in M.R.Evid. 606(b), which states:

> **(b) Inquiry Into Validity of Verdict or Indictment.** Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him or concerning his mental processes in connection therewith, except that a juror may testify on the question whether *extraneous prejudicial information* was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received.

(Emphasis added.) "Rule 606(b) codifies the 'settled doctrine of this State' ... that evidence of statements by jurors may not be used to demonstrate 'any impropriety in the conduct of the jury in the jury room,' but may be offered only to show 'external misconduct of individual jurors' or 'the exertion of outside influence' upon the jury." *Marr v. Shores,* 495 A.2d 1202, 1204 (Me.1985) (citations omitted).

We have defined "extraneous" as "information introduced to the jury from outside the normal deliberative process," *Id.* at 1205, and have granted new trials when a jury is exposed to such extraneous information. *See State v. Royal,* 590 A.2d 523 (Me.1990) (juror used information from coworker who knew defendant); *Dongo v. Banks,* 448 A.2d 885, 888–89 (Me.1982) (jury used dictionary to look up legal definitions); *Simmons v. State*

---

1. We remind the trial court that so long as jurors are prohibited from taking notes during the course of a trial, the court should be alert to the enforcement of the prohibition. If the trial court allows jurors to take notes, then the note-taking should be monitored by the court and the jury carefully instructed. *See Esaw v. Friedman,* 217 Conn. 553, 586 A.2d 1164, 1169 (1991).

*Highway Comm'n,* 222 A.2d 366 (Me.1966) (jury used real estate appraisal book); *Heffron v. Gallupe,* 55 Me. 563 (1868) (jury used pamphlet containing evidence from former trial between parties). Likewise, information obtained from independent investigation by jurors has been a ground for a new trial. *See Driscoll,* 112 Me. at 290, 92 A. 39 (new trial granted when juror examined cow and calf of plaintiff); *Winslow v. Morrill,* 68 Me. 362 (1878) (new trial granted when juror conducted independent examination of defendant's wool shop); *Bowler v. Inhabitants of Washington,* 62 Me. 302 (1873) (new trial granted when juror visited scene of accident and spoke with two people familiar with the accident).

■ Information communicated among jurors during the deliberation process, however, is not considered to be extraneous, and may not be inquired into even if the information is improper. *Marr,* 495 A.2d at 1204–05 (juror disclosure to other jurors of personal knowledge regarding plaintiff's health insurance not deemed extraneous and motion for new trial properly denied); *see also Shepherd v. Inhabitants of Camden,* 82 Me. 535, 20 A. 91 (1890).

■ In his motion for a new trial, Fuller alleges that notes were taken by jurors and those notes were brought into the jury room and used during deliberations. In arguing that he is permitted to prove that the jurors used extraneous notes during their deliberations, Fuller assumes that any notes taken and used by a juror, regardless of content, are "extraneous" within the meaning of Rule 606(b). Contrary to Fuller's argument, the jurors' notes in this case cannot properly be categorized as extraneous. Fuller neither alleges that anything but evidence presented at the trial was contained in the notes, nor does he contend that any information from a source outside of the trial was used by the jurors.

We noted in *Royal* that once a defendant shows that a juror was subjected to extraneous information, a presumption of prejudice arises and the burden shifts to the State to demonstrate by clear and convincing evidence the absence of prejudice. 590 A.2d at 524–25. Because the jurors' notes in this case cannot be characterized as "extraneous," Fuller cannot rely on the presumption of prejudice, and there is no need to grant him an evidentiary hearing. Even if he proves everything he has alleged, that is not enough to show that there was extraneous information and that he is entitled to a new trial.

Furthermore, if an evidentiary hearing were held, Fuller could not prove the effect the notes may have had on the jury's arrival at a guilty verdict. This is precisely the inquiry that is forbidden by Rule 606(b) and *Marr. See also Dongo,* 448 A.2d at 889 (investigation into substance of jury deliberations to determine whether improper use of dictionary was in fact prejudicial would be impermissible); *cf. Cyr v. Michaud,* 454 A.2d 1376, 1382 (Me.1983) (juror affidavits may not be used to impeach verdict).

The court acted properly and well within its discretion in conducting the telephone inquiry, in denying the motion for a new trial, and declining to conduct a further hearing.

The entry is:

Judgment affirmed.

All concurring.