1999 ME 28

**STATE of Maine**

v.

**Theresa COBURN.**

Supreme Judicial Court of Maine.

Submitted on Briefs Dec. 22, 1998.

Decided Feb. 11, 1999.

**1240**

Stephanie Anderson, District Attorney, Julia A. Sheridan, Asst. Dist. Atty., Portland, for State.

Matthew B. Nichols, Boulos & Nichols, Saco, for defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

SAUFLEY, J.

[¶ 1] Theresa Coburn appeals from a judgment entered in Superior Court (Cumberland County, *Crowley, J.*) denying her motion for a judgment of acquittal or, alternatively, for a new trial. On appeal, Coburn contends that the Superior Court erred when it refused to grant her motion for a new trial after the jury received extraneous information during its deliberations. We agree and vacate the judgment.

### I. Background

[¶ 2] In January 1998, Theresa Coburn was tried by a jury and found guilty of a single count of operating under the influence of alcohol. The State presented the following evidence in support of the charge. In the early morning hours of July 21, 1997, Robert Doherty, a Portland police officer, observed two cars traveling outbound on Congress Street; the rear car was operating with its high beams illuminated. Finding the use of high beams behind another car unusual, Officer Doherty turned his car around and followed. He observed that the rear car stopped at a flashing yellow light for approximately 15 seconds and then observed that it weaved in and out of its travel lane. He also observed the car make an extremely wide turn from Congress Street onto Stevens Avenue. He testified that, "if you are familiar with Congress and Stevens, ... it's a large intersection, and the vehicle actually went over to the lane where you would be either heading straight into Westgate or the lane for people that would turn left onto Congress Street."

[¶ 3] Doherty signalled the car to stop and asked the driver of the car, Coburn, for her driver's license, proof of registration, and insurance. While she complied with his instructions, he noticed both that her breath smelled of intoxicants and that her eyes appeared glassy and bloodshot. As a result of his observations, Doherty asked Coburn to perform a series of field sobriety tests. She cooperated at first, but then refused to perform the tests, displaying further signs of possible intoxication while doing so. Doherty then arrested Coburn for operating under the influence of alcohol. At the county jail, Coburn refused to acknowledge that the offi-

cer had read the form advising her of her rights, refused to sign the form, and refused to take a breath test.

[¶ 4] Coburn was charged with operating under the influence of alcohol pursuant to 29–A M.R.S.A. § 2411(1) (1996). A jury trial was held in January of 1998. During its deliberations, the jury asked the court for a read-back of Doherty's testimony concerning Coburn's alleged "wide turn." At a later point in its deliberations, the jury reported that it was having difficulty reaching a unanimous verdict. The trial judge gave the jurors appropriate instructions on continued deliberations and sent them home for the day with instructions not to discuss the case with anyone and to return to their deliberations the next day, a Friday. Unfortunately, the ice storm of 1998 prevented the jurors from returning to the courthouse until the following Monday. After a brief period of deliberations, the jury returned a verdict of guilty.

[¶ 5] After the jury entered its verdict, Coburn learned that two jurors had received extraneous information regarding her case at some time during the trial or the deliberations. Coburn therefore filed a motion for a judgment of acquittal or, alternatively, for a new trial. The State and Coburn entered into a stipulation regarding the extraneous information in order to avoid calling the jurors to testify. The stipulations read as follows:

> [A juror] inquired of her husband, a former law enforcement officer and current Superior Court financial screener, what purpose the breathylizer [sic] served. He told her that the breathylizer [sic] served a twofold purpose. One, a test result over the legal limit would confirm or validate the officer's testimony regarding his observations of impairment. Two, the defendant had the opportunity to show that she was innocent by providing a breath sample below the legal limit;

and,

> [The] jurors were given information from another juror regarding the "wide turn"

from Congress Street onto Stevens Avenue. Specifically, a female juror who was unfamiliar with the intersection in question went out of her way to make that turn and reported to the other jurors that she did not have to turn wide.

After a hearing on the matter, the Superior Court denied Coburn's motion for a judgment of acquittal or for a new trial. Coburn then filed this appeal.

## II. Discussion

[¶ 6] To have found Coburn guilty of OUI, the jury must have concluded, beyond a reasonable doubt, that Coburn "operate[d] a motor vehicle . . . [w]hile under the influence of intoxicants[,] or . . . [w]hile having a blood-alcohol level of 0.08% or more." 29–A M.R.S.A. § 2411(1). It was undisputed that Coburn had operated a motor vehicle; therefore, the only question before the jury was whether she did so while under the influence of intoxicants.[1] The state and federal constitutions guarantee that the accused shall have a right to a fair and impartial jury trial. *See* Me. Const. art. I, § 6; U.S. Const. amend. VI. Coburn contends that she was denied this right when the jury received extraneous information concerning both the purpose of an intoxilyzer test and Coburn's alleged "wide turn" from Congress Street onto Stevens Avenue.

[¶ 7] When a defendant demonstrates that a juror was subjected to extraneous information and that the information is sufficiently related to the issues presented at trial, a presumption of prejudice is established, and the burden of proof shifts to the State to demonstrate by clear and convincing evidence that the information did not cause prejudice to the defendant. *See State v. Royal,* 590 A.2d 523, 525 (Me.1990) (citing *State v. Kelley,* 357 A.2d 890, 898–99 (Me. 1976)).[2] The trial court begins its analysis

---

1. Because Coburn refused to submit to an intoxilyzer test, there was no evidence of her blood-alcohol level.

2. Extraneous information refers to information that is received during the juror's activities as a juror and must be distinguished from information or knowledge held by a juror prior to jury service. A juror's life experiences and common sense understandings are not "extraneous information" giving rise to the presumption. "Infor-

by determining the nature, extent, timing and source of the information received by the jurors. It may not, however, inquire into the substance of the jury's deliberations. *See Taylor v. Lapomarda,* 1997 ME 216, ¶ 6, 702 A.2d 685; *State v. Kelley,* 357 A.2d 890, 898–99 (Me.1976); *Patterson v. Rossignol,* 245 A.2d 852, 856–57 (Me.1968).[3]

[¶ 8] Once the trial court is convinced that a juror received extraneous information that was meaningfully related to the issues presented at trial, the jury verdict must be vacated unless the State demonstrates, by clear and convincing evidence, that the extraneous information did not prejudice the defendant. *See Royal,* 590 A.2d at 525. We review the trial court's finding regarding the prejudicial effect of extraneous evidence "only for clear error and will overturn the court's denial of a motion for a new trial only if there is no competent evidence to support it." *Id.*

### A. Presumption of Prejudice

[¶ 9] Because of the "long-recognized and very substantial concerns support[ing] the protection of jury deliberations from intrusive inquiry," the trial court must assure that the process used to ascertain the facts relative to the juror's receipt of extra-

neous information does not encroach on the contents of the deliberations. *Tanner v. United States,* 483 U.S. 107, 127, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987). *See* M.R.Crim. P. 606(a). The trial court did so here by accepting the stipulations of the parties in lieu of testimony from the jurors. When the parties are able to agree on the source and the specifics of the extraneous facts acquired by a juror during trial, there is no need for testimony from that juror. This mechanism, similar to *in camera* inquiry by the court, avoids the prospect of unacceptable intrusions into the deliberations of the jury.[4]

[¶ 10] Once the trial court received the stipulations, its next task was to determine whether the information was, in fact, sufficiently relevant to the issues presented at trial to raise the presumption of prejudice. *See State v. Kaler,* 1997 ME 62, ¶¶ 12–13, 691 A.2d 1226. Here, the court concluded that the information regarding the layout of the intersection did raise the presumption. It also determined that, while the information regarding the purpose of a breath test was only marginally relevant, it would assume that the presumption of prejudice had been raised. Because the jury in an OUI trial is entitled to consider the failure of a defendant to submit to a chemical test,[5] information

---

3. The extent to which a juror may testify regarding the process of the jury's deliberation is governed by M.R. Evid. 606. This rule provides:

   Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations *or to the effect of anything upon that juror's or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning any juror's mental processes in connection therewith,* except that a juror may testify on the question whether extraneous

   mation disclosed to other jurors from the prelitigation experience of a juror usually is not grounds for impeaching the verdict, even if the information relates specifically to the case on trial." Field & Murray, *Maine Evidence* § 606.2 at 250 (4th ed.1997) (citing *Marr v. Shores,* 495 A.2d 1202 (Me.1985)). If, however, a juror fails during pretrial *voir dire* to respond to the court's inquiries regarding specific knowledge about the facts of the case at bar, the court may separately assess the possible prejudice to a party. *See generally Eckenrode v. Heritage Management Corp.,* 480 A.2d 759, 764 (Me.1984).

   prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror.
   M.R. Evid. 606(b) (emphasis added). We recognize that our opinion in *State v. Royal,* 590 A.2d 523, 525 (Me.1990) implied that a trial court should question the jurors concerning the impact of any extraneous information to which they were exposed. In order to determine whether the jury's verdict was tainted by the extraneous information. Such an inquiry would be incorrect as a matter of law. We now *emphatically* restate that a court may not inquire into the substance of the jury's deliberations.

4. *See also United States v. Calbas,* 821 F.2d 887, 896 (2d Cir.1987) (finding that the trial court, in order to prevent inappropriate inquiry into deliberations, had "wisely refrained from allowing an inquiry to become an adversarial evidentiary hearing").

5. "Failure of a person to submit to a chemical test is admissible in evidence on the issue of whether that person was under the influence of intoxicants." 29-A M.R.S.A. § 2431(3) (1996).

regarding the "purpose" of a test is directly relevant to the issues before the jury. To avoid misunderstandings or possible jury confusion, any such information should be presented to the jury, if at all, in the controlled confines of the trial. We find no error in the court's determination that the presumption of prejudice had been raised. *See Royal,* 590 A.2d at 525.

■ [¶ 11] The burden then shifted to the State to prove, by clear and convincing evidence, that the extraneous information did not prejudice the jury's verdict. *See id.* Because the trial court is in the best position to understand the nuances of the evidence presented and the context in which the extraneous information was received, we give substantial deference to the trial court's assessment of the prejudicial effect, if any, of extraneous information received by a juror. *See id.; United States v. Rogers,* 121 F.3d 12, 17 (1st Cir.1997) (citing *United States v. Cheyenne,* 855 F.2d 566, 568 (8th Cir.1988)).

### (1) The View of the Intersection

■ [¶ 12] The trial court concluded that the information obtained by the juror who went to the intersection at issue did not have much of an impact on the jury's deliberations and therefore that the State had rebutted the presumption of prejudice. We conclude that the State offered no persuasive evidence that the extraneous information did not prejudice the case.

[¶ 13] The stipulation demonstrates that one of the jurors went out of her way to locate and drive through the intersection at issue and determine whether it was necessary to make a "wide turn" from Congress Street onto Stevens Avenue. She then shared her conclusion—that a wide turn was not necessary—with the rest of the jury.

Her conclusion confirmed the State's position that Coburn's operation of her car was unusual and therefore that she was impaired by alcohol.

[¶ 14] This is not a case where jurors used their own knowledge about local geography or their common sense regarding driving patterns. Nor was this information obtained coincidentally during the course of the trial. Rather, a juror who was not familiar with the intersection went out of her way to see it on her own after hearing the State's evidence regarding the intersection.[6] A reasonable inference can be drawn from this act that the State did not provide sufficient evidence regarding the intersection to allow the juror to draw conclusions without an independent investigation.[7] Moreover, the jury's request for a read-back of the officer's "wide turn" testimony demonstrates that it played a role in the jury's determination.

[¶ 15] In its effort to rebut the presumption, the State presented no persuasive argument that Coburn was not prejudiced by the juror's investigation except to rely on our decision in *State v. Royal,* 590 A.2d at 525. There, the evidence against the defendant suggested that he had bound his victim with duct tape, and there was testimony during the trial about the presence of "residue" from the tape on the victim's skin. *See id.* The jury was reported to have "smuggled duct tape into the jury room and performed an experiment with it by wrapping it around [a juror's] wrists and leaving it there for 15 minutes before removing it to see if it left a residue." *Id.* We let stand the trial court's conclusion that the experiment did not have a prejudicial impact on the verdict. In contrast to the facts before us today, the experiment in *Royal* took place in the jury room,

---

6. Although the potential for prejudice may not be as strong in civil matters, courts have required new trials where jurors have investigated the scene of an accident. *See Bowler v. Inhabitants of Washington,* 62 Me. 302, 303–04 (1873) (new trial granted where two jurors visited the road where the alleged accident occurred); *Markee v. Biasetti,* 410 Mass. 785, 575 N.E.2d 1083, 1085 (1991) (new trial granted for lack of a fair trial where two jurors visited the scene of the accident, made various measurements, and observed automobiles going through the intersection).

7. *But see State v. Rodriquez,* 694 A.2d 1202, 1202–03 (R.I.1997) (juror investigation of store to observe location of surveillance cameras and layout of store where alleged robbery occurred did not warrant new trial); *Forney v. State,* 255 Ga. 316, 338 S.E.2d 252, 256 (1986) (fact that eight jurors made unauthorized visit to the scene of alleged murder did not warrant a new trial).

during deliberations, when all jurors were present and were apparently "testing" the State's conclusions. With the exception of the presence of the duct tape, such conversations and efforts to test the conclusions urged on the jurors by the parties are a natural part of the deliberation process.

[¶ 16] Here, in contrast, a single juror went to an intersection and gathered additional facts about the scene of the events. She did so outside of the fact-gathering process of the trial, without other jurors, and under circumstances that could not be addressed by the parties or challenged by other jurors. She then gave the information she had gathered to the other jurors under circumstances where no advocacy could be brought to bear on the jurors' receipt of that information and the trial court could not give a curative instruction. We conclude that the State did not meet its burden of rebutting the presumption of prejudice.

### (2) The Purpose of the Intoxilyzer

[¶ 17] A second juror questioned her husband at some time during the trial about the purposes of an intoxilyzer test. Her husband, a former law enforcement officer, was then employed as a financial screener for the Superior Court. He told her that the test could confirm the officer's suspicion of Coburn's intoxication and could provide the defendant with the opportunity to "show" her "innocence."

[¶ 18] The only argument offered by the State to rebut the presumption of prejudice from this information was the assertion that this was not a "test" case—it was a "refusal" case. Therefore, according to the State, the information was only tangentially relevant and could cause no prejudice. The trial court agreed. Again, we look for competent evidence to support the court's conclusion and will overturn the denial of the motion for new trial only if there is clear error.

[¶ 19] We find error for two reasons. First, the very fact that a juror in a criminal proceeding has discussed the evidence at trial with a former member of law enforcement gives rise to concerns about the juror's ability to remain impartial. Second, the husband's response indicated that the defendant had the opportunity and, by implication, the *burden* of proving that she was not guilty of the crime with which she had been charged. We regard the risk that this implication was accepted by the juror as significant. Having scrutinized the record for any evidence offered by the State that would show that the jury's verdict was not, in fact, tainted by this prejudice, we find none. Again, the court did not learn of the juror's conversation with her husband in time to provide a curative instruction regarding the State's burden or addressing the acceptable use to which evidence of the refusal could be put.

[¶ 20] Because the court may not inquire into the substance of the jury's deliberations, we recognize that direct evidence that the jury's verdict was not tainted by the extraneous information is almost impossible to produce.[8] Therefore, in making its case that the jury's verdict was not influenced by the extraneous information, the State will usually be limited to circumstantial evidence and arguments based on inductive reasoning. This task was designed to be difficult, and in this case, we can reach no other conclusion but that the State failed to satisfy its burden. Accordingly, we vacate the judgment of the trial court denying Coburn's motion for a new trial.

The entry is

Judgment vacated. Remanded to the Superior Court with instructions to grant the defendant's motion for a new trial.

---

8. For this reason, jurors are instructed frequently throughout the course of a trial that they must not discuss the case with anyone and must not undertake any independent investigations. *See* Alexander, *Maine Jury Instruction Manual,* § 2–26 (3d ed.1998). Where a juror does not heed those instructions, the State's burden of demonstrating no prejudice to the defendant is heavy.