MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:       2023 ME 55
Docket:         Pis-22-214
Argued:         February 8, 2023
Decided:        August 17, 2023

Panel:          STANFILL, C.J., and MEAD, JABAR, HORTON,* CONNORS, and LAWRENCE, JJ.

STATE OF MAINE

v.

DANIEL P. WARNER

LAWRENCE, J.

[¶1] Daniel P. Warner appeals from a judgment of conviction of unlawful sexual contact (Class C), 17-A M.R.S. § 255-A(1)(E) (2023), entered by the trial court (Piscataquis County, *Anderson, J.*) after a jury trial. Warner argues that (1) the prosecutor erred in making statements during closing arguments regarding the jury's consideration of the victim's motive to lie, (2) the court erred in instructing the jury regarding motive, and (3) the court created an improper risk of coercing the jury to deliberate hastily after a juror was potentially exposed to COVID-19. We affirm the judgment.

---

* Although not available at oral argument, Justice Horton participated in the development of this opinion. *See* M.R. App. P. 12(a)(2) ("A qualified Justice may participate in a decision even though not present at oral argument.").

## I. BACKGROUND

[¶2]  "Viewing the evidence admitted at trial in the light most favorable to the State, the jury could rationally have found the following facts beyond a reasonable doubt."[1]  *State v. Athayde*, 2022 ME 41, ¶ 2, 277 A.3d 387.  The procedural history is drawn from the record.  *See State v. Sousa*, 2019 ME 171, ¶ 2, 222 A.3d 171.

[¶3]  On October 25, 2019, Warner brought his daughter to his mother's house, where the victim, Warner's niece, lived.  At the house, Warner encountered the victim in her bedroom.  Initially, Warner touched the victim's breast and, after sitting on the bed with the victim, Warner unzipped his pants and made the victim touch his genitals.

[¶4]  The victim went to the bathroom, washed her hands, and came back to her room.  Warner then got up from the bed, unzipped his pants again, and touched the victim's cheek with his genitals.  At the time, Warner was thirty-seven years old; the victim was thirteen.

[¶5]  Warner was charged by criminal complaint filed on January 23, 2020, and by indictment filed on October 29, 2020, for two counts of unlawful

---

[1] As discussed below, *see infra* ¶¶ 5, 11, the jury acquitted Warner of two counts of unlawful sexual touching and one count of unlawful sexual contact, and we thus do not discuss facts specific to those counts.

sexual contact (Class C), 17-A M.R.S. § 255-A(1)(E),[2] and two counts of unlawful sexual touching (Class D), 17-A M.R.S. § 260(1)(C) (2023).  A jury trial was held on November 17, 18, and 19, 2021.

[¶6]  Before the start of the second day of trial, a juror disclosed that the day before trial, she had been in close contact with a person who had just tested positive for COVID-19 that morning.  The juror tested negative, but the court and parties agreed to release her.  The parties agreed that they did not want a mistrial and would proceed by allowing the jurors to decide whether to continue the trial as scheduled or postpone the trial for a couple weeks.

[¶7]  The court informed the remaining jurors about the potential COVID-19 exposure and stated that the jurors could either continue with the trial that day or postpone the remainder of the trial a couple weeks.  During its recitation of the events, the court stated that "nobody wants this trial to end today in what would be called a mistrial, meaning it would be done later.  We'd have to pick another jury later and all of that.  Nobody wants that."  Regarding

---

2  Title 17-A M.R.S. § 255-A(1)(E) (2023) provides that "[a] person is guilty of unlawful sexual contact if the actor intentionally subjects another person to any sexual contact and . . . [t]he other person, not the actor's spouse, is in fact less than 14 years of age and the actor is at least 3 years older."  Title 17-A M.R.S. § 251(1)(D) (2023) defines "[s]exual contact" to mean "any touching of the genitals or anus, directly or through clothing, other than as would constitute a sexual act [as defined by 17-A M.R.S. § 251(1)(C) (2023)], for the purpose of arousing or gratifying sexual desire or for the purpose of causing bodily injury or offensive physical contact."

4

the jurors' choice, the court also said that "one person basically can determine this. And I realize that could make it awkward for people. It could put some pressure on people or whatever."

[¶8] The court gave each juror a piece of paper to use for voting anonymously in the jury room. The jury unanimously voted to continue with the trial. Warner did not object at any point during this process.

[¶9] During closing arguments, the prosecutor asked the jury to consider whether the victim had a motive to lie.[3] Defense counsel then argued to the jury that determining motive was not the jury's job and that whether the victim had a motive was not relevant.[4] The prosecutor contended to the jury in rebuttal

---

[3] The prosecutor stated,

> And, folks, one of the things that you can consider when you're assessing [the victim's] credibility is, did she have any motive to tell anything but the truth? What motive did she have to come in here and tell you something that was not true? What motive? We would suggest to you, based upon the evidence that you've heard, there was absolutely no reason for her to come in here and tell you anything but the truth of what happened to her.
>
> Now, to have a motive to lie, wouldn't you have to find some kind of malice, ill will? Based upon the evidence, folks, and from what you saw her testifying to and the manner in which she testified, her mannerisms, her method of — of communicating, did you ever, ever get the sense that she had a single bone in her body that was bad? We would suggest to you, folks, that based upon the evidence, that based upon the way she testified, she was being genuine, telling you what happened.

[4] Defense counsel stated that the prosecutor "was asking, what motive would [the victim] have to lie? Who knows? Nobody's saying she's lying. She may think this really happened." Defense counsel also suggested that the victim likes to use her imagination and plays lots of video games. Later, defense counsel argued, "Again, we don't know why she's saying these things. It's not up for anybody to wonder why she's saying these things. [The prosecutor] asked you, well, what motive does she have to lie? It's not your job to figure that out. Again, that's a red herring. That's trying to distract

that motive is important.[5]   Warner did not object to the prosecutor's statements.

[¶10]  The court later instructed the jury regarding witness credibility and motive.  Regarding motive, the court told the jury that it could "consider whether there has been any evidence introduced of a motive or lack of motive shown for any witness to exaggerate or even lie."  Warner did not object to the court's instructions.

[¶11]  The case went to the jury in the late morning.  During its deliberations, the jury requested that portions of the victim's testimony be read back to them.  Mid-afternoon, the jury returned a verdict of guilty on one count of unlawful sexual contact and acquitted Warner of the remaining three counts.[6]  Warner was sentenced to two years of imprisonment, with all but sixty

---

you from everything else.  You're not here to figure out whether or not she had a motive to lie.  That's not relevant.  You can't consider that.  What you can consider is the facts, which, again, if they don't fit, it's reasonable doubt."

[5]  The prosecutor stated that defense counsel "said that . . . this idea that we don't have to show that she had a motive to lie, that's got nothing to do with this case.  Well you listen — you listen to this judge's instructions about how to assess credibility, and you're gonna hear that word motive.  It is important.  The law says it's important.  Your common sense tells you it's important to decide whether or not that young girl had any motive other than to be accurate . . . ."

[6]  During the trial, the court denied Warner's "motion[s] for [judgments of acquittal]" and his "motion for a [judgment of acquittal] notwithstanding the jury verdict" regarding the count for which the jury returned a guilty verdict.  Viewing the evidence in the light most favorable to the State, we conclude that the jury "rationally could find beyond a reasonable doubt every element" of this charged offense.  *State v. Dorweiler*, 2016 ME 73, ¶ 6, 143 A.3d 114 (quotation marks omitted).

6

days suspended, and a two-year probationary period.[7]    Warner timely

appealed.  *See* 15 M.R.S. § 2115 (2023); M.R. App. P. 2B(b)(1).

## II.  DISCUSSION

### A.    The Prosecutor's Statements Regarding Motive

[¶12]   Warner contends that the prosecutor's statements regarding

motive made in closing arguments, in combination with the court's instruction

regarding motive, discussed below, *see infra* ¶¶ 18-21, might have caused the

jurors to "look to [Warner] to prove that [the victim] had a motive to fabricate

her allegations."[8]  Warner argues that the statements implied to the jury that he

had a burden to present evidence to disprove the charges against him and were

obvious error, particularly considering that the case "could have gone either

way" and that the jury acquitted Warner on three counts.

[¶13]   We review for obvious error because, as Warner concedes, he

failed to object to the prosecutor's statements during trial.  *See State v. Wai

Chan*, 2020 ME 91, ¶ 23, 236 A.3d 471.  "To show obvious error, there must be

---

[7] Warner was also ordered to pay a fine and required to register as a sex offender for twenty-five years.  The Sentence Review Panel denied Warner's application for leave to appeal from the sentence. *See* 15 M.R.S. §§ 2151, 2152 (2023); M.R. App. P. 20(a)(1), (f).

[8] Specifically, Warner argues that the prosecutor implied "that the defense is wrong in asserting 'we don't have to show that [the victim] had a motive to lie'" and told jurors that "'common sense tells you it's important' that defendant offer evidence that [the victim] had reason to fabricate her allegations."

(1) an error, (2) that is plain, and (3) that affects substantial rights." *Id.* ¶ 23 (quotation marks omitted); *see also* M.R. Crim. P. 52(b). To show that an "error affected a defendant's substantial rights, the defendant has a significant burden of demonstrating a reasonable probability that the prosecutor's statement affected the outcome of the proceeding." *Wai Chan*, 2020 ME 91, ¶ 23 n.14, 236 A.3d 471 (quotation marks omitted). If a statement does not cause an objection, "that statement will rarely be found to have created a reasonable probability that it affected the outcome of the proceeding." *Id.* ¶ 24 (quotation marks omitted). Moreover, even if those "three conditions are met, we will set aside a jury's verdict only if we conclude that (4) the error seriously affects the fairness and integrity or public reputation of judicial proceedings." *Id.* ¶ 23 (quotation marks omitted); *see also State v. Dolloff*, 2012 ME 130, ¶¶ 35-39, 58 A.3d 1032 (stating that we will not set aside a jury verdict "lightly" and that "serious and manifest injustice must be present").

[¶14] We will first review instances of alleged prosecutorial error to determine whether error occurred, and, if there was error, we will then "review the State's comments as a whole, examining the incidents of" error both alone and cumulatively.[9] *Wai Chan*, 2020 ME 91, ¶ 24, 236 A.3d 471 (quotation marks

---

[9] In this case, Warner does not allege that the prosecutor's statements were made in bad faith and instead focuses on the impact the prosecutor's statements had on his trial. So, our review will focus

8

omitted).  "This includes taking into account the statements, comments, and strategy of the defense, especially when the prosecutor's statements are made in response to the theory, argument, or provocation of the defendant or defense counsel."  *Dolloff*, 2012 ME 130, ¶ 44, 58 A.3d 1032.  "Shifting the burden of proof to the defendant or suggesting that the defendant must present evidence in a criminal trial is improper closing argument."  *State v. Cheney*, 2012 ME 119, ¶¶ 34-35, 55 A.3d 473 (adding that the State can, however, "forcefully argue to the jury that the evidence does not support or is not consistent with the defendant's theory of the case"); *see also Dolloff*, 2012 ME 130, ¶¶ 42-43, 58 A.3d 1032.  Because "[j]urors should not be invited to arrive at a verdict for any reason other than their evaluation of the evidence," we have "long criticized prosecutors' appeals to . . . issues that go beyond the evidence produced at trial."  *State v. Woodard*, 2013 ME 36, ¶ 34, 68 A.3d 1250.

[¶15]  Here, there was no prosecutorial error.  One of defense counsel's theories of the case was that the victim's testimony was incorrect and Warner's testimony was correct.  The prosecutor's initial statements suggested that the

---

on Warner's claim of prosecutorial error and an assessment of the impact of the alleged error on Warner's due process rights.  *See State v. White*, 2022 ME 54, ¶¶ 19-20 n.9, 285 A.3d 262 (using "the term 'error' instead of 'misconduct' because our review focuses not on the prosecutor's subjective intent but on the due process rights of the defendant").

jury could consider the victim's motive to lie and that "based upon the evidence, that based upon the way she testified, [the victim] was being genuine." *Supra* n.3; *see State v. Hunt*, 2023 ME 26, ¶¶ 32-34, 293 A.3d 423 (rejecting argument that the prosecutor improperly suggested that the defendant had failed to prove a motive for the victim to make up the allegations and stating that "[t]he record reveals no obvious error because the prosecutor's argument remained focused on the evidence and the jury's role in determining the facts from that evidence"); *State v. Cummings*, 2023 ME 35, ¶¶ 23-25, 295 A.3d 1227 (determining there was no prosecutorial error and explaining that "[a]lthough [the defendant] asserts that the challenged portion of the State's argument must refer to his failure to supply a motive . . . it could easily be understood to refer to a credible victim who did not testify to anything that suggested a motive for her to lie"); *Sousa*, 2019 ME 171, ¶¶ 7, 10-13, 222 A.3d 171.

[¶16]  Defense counsel argued to the jury that it was not the jury's job to determine whether the victim had a motive to lie, that it was possible she really thought the events happened, and that the jury could not consider motive because it was not relevant.  *See supra* n.4.  In rebuttal, the prosecutor's comments regarding motive stated merely that consideration of motive was important and did not argue that Warner failed to show the victim had a motive

to lie. *See supra* n.5; *Wai Chan*, 2020 ME 91, ¶¶ 25-27, 236 A.3d 471 (determining certain statements did not constitute prosecutorial error "because they were focused on the evidence that had been admitted" instead of the defendant's failure to provide evidence of innocence). Thus, there was no prosecutorial error. *See Dolloff*, 2012 ME 130, ¶¶ 44, 64-66, 58 A.3d 1032.

[¶17] Further, the court informed the jury of the State's burden of proof and the presumption of Warner's innocence multiple times throughout the trial process, and it specifically instructed during trial that "[t]he defendant does not have to prove anything" or present evidence, that counsel's statements during closing are not evidence, and that the court provides the applicable law. *See id.* ¶ 55 (stating that "[j]uries are presumed to have followed jury instructions"); *Wai Chan*, 2020 ME 91, ¶¶ 9, 26, 28-29, 236 A.3d 471 (determining that the language "'well, where's the evidence?'—was more problematic" but not obvious error given the court's instructions to the jury, including regarding the burden of proof).

B.     The Court's Instruction Regarding Motive

[¶18] Warner also argues that the court erred because "[r]ather than ameliorating th[e] burden-flip, the court reified the prosecutor's burden flip" by instructing the jury "that the lack of evidence that [the victim] had reason to

fabricate her claims was something" the jury could consider in deliberations. Further, Warner contends that any general instruction regarding burden of proof did not fix this error.[10]

[¶19]  We review for obvious error because Warner failed to object to the court's instruction.  *See State v. Rosario*, 2022 ME 46, ¶ 29, 280 A.3d 199.  To determine whether the court's instruction regarding motive was error, we will "evaluate the instructions in their entirety and consider their total effect, the potential for juror misunderstanding, and whether the instructions informed the jury correctly and fairly in all necessary respects of the governing law." *Id.* (quotation marks omitted).

[¶20]  The court did not commit obvious error.  The court instructed the jury that it could "consider whether there has been any evidence introduced of a motive or lack of motive shown for any witness to exaggerate or even lie." Thus, the court did not, as Warner states, instruct the jury that it should consider any *lack of evidence* regarding the victim's motive to lie.  Rather, the court's instructions permitted the jury to consider whether there had been

---

[10] Warner disagrees with treating his arguments concerning the prosecutor's statements and the court's instruction as separate issues because "this is a singular problem, though obviously comprised of separate missteps by the prosecutor and trial judge."  Even considering these alleged errors cumulatively, however, we conclude that there was not obvious error. *See State v. Dolloff*, 2012 ME 130, ¶¶ 74-76, 58 A.3d 1032.

12

*evidence of* a motive or *evidence of* a lack of motive "shown for any witness to exaggerate or even lie." Additionally, this instruction was framed as something the jury "may consider" and was given as one of "many tests that can be used" to determine a witness's credibility. *See* Alexander, *Maine Jury Instruction Manual* § 6-24 at 6-46 (2023 ed. 2023) (including as a representative instruction that the jury "[c]onsider each witness's intelligence, motive, and state of mind, and how they appeared while testifying").

[¶21] Further, as discussed above, *see supra* ¶ 17, the court properly instructed the jury regarding the State's burden of proof, the presumption of Warner's innocence, and the fact that "[t]he defendant does not have to prove anything" or present evidence.[11] There was no obvious error. *See State v. Ashley*, 666 A.2d 103, 106-07 (Me. 1995) ("Deviation from a representative instruction, where the given instruction fully and accurately informs the jury of the applicable law, is not error, let alone obvious error.").

---

[11] In future, similar cases, where the evidence of guilt rests primarily upon testimony that is at odds with the defendant's testimony and the attorneys are discussing motive in closing arguments, courts may wish to give an instruction regarding motive closer in time to an instruction regarding the State's burden of proof and the defendant's lack of burden of proof, or, depending upon the circumstances, even eliminate the language regarding motive from the credibility instruction.

## C.     Jury Coercion

[¶22]  Finally, Warner contends that the court's process in allowing the jurors to choose whether to proceed with or postpone the trial after a potential COVID-19 exposure "created an improper risk of coercing the jurors to deliberate hastily."  Specifically, Warner argues that the jurors should have been free to deliberate without "concerns that they might be sitting next to jurors who are COVID-19 contagious; free from the court's admonition that 'nobody wants a mistrial;' and free from psychological priming to avoid dissent in favor of unanimity."

[¶23]  Our review is for obvious error because Warner failed to object to the court's process and instruction.  *See Rosario*, 2022 ME 46, ¶ 29, 280 A.3d 199; *State v. DeLong*, 505 A.2d 803, 806 (Me. 1986).  "[W]e consider the effect of the instructions as a whole and the potential for juror misunderstanding." *State v. Gantnier*, 2008 ME 40, ¶ 13, 942 A.2d 1191; *see DeLong*, 505 A.2d at 806-07 (considering the totality of the circumstances when rejecting defendant's argument that the justice impermissibly "coerced the jury into its verdict by keeping them deliberating beyond a reasonable hour and by then impatiently imposing a time limit").

[¶24] The court did not coerce the jury to reach a verdict. After receiving the information regarding a potential COVID-19 exposure, the court presented the jurors with the choice to continue with or postpone the trial. The court emphasized that one person could be the deciding vote, but the court acknowledged that such unilateral power could result in some pressure on the individual jurors; the court therefore gave each juror a piece of paper so that the jurors could vote anonymously. The jury unanimously voted to continue with the trial, and there is no indication that any juror felt pressured to continue.[12]

[¶25] Warner is correct that the court stated that "nobody wants this trial to end today in what would be called a mistrial . . . . Nobody wants that." Although the court could have perhaps used better phrasing, ultimately this statement occurred a day prior to the jury's deliberations and was made in the context of the court presenting options to the jury given the potential COVID-19 exposure. *See DeLong*, 505 A.2d at 807 (explaining that "the justice's remarks . . . viewed *in context* as they must be, do not appear coercive").

---

[12] In addition, the transcript of the jury selection proceedings indicates that the court took steps, via a questionnaire, to ensure that jurors felt comfortable about COVID-19 risks generally.

[¶26]  Further, on the last day of trial, before the jury's deliberations, the court instructed the jurors that they "should deliberate with a view to reaching agreement if you can do that without violating your individual judgment" and "should not be giving up a well-reasoned belief simply because you stand alone or in the minority or because you'd like to end the case and go home." *See* Alexander, *Maine Jury Instruction Manual* § 6-64 at 6-144 (2023 ed. 2023). The court encouraged the jurors to work on their own schedule and stated that the court did not "want jurors under the gun when they're deliberating."

[¶27]  The jurors deliberated for several hours and, when needed, requested that portions of the victim's testimony be read to them.  There is no indication in the record that the jurors felt coerced into reaching their verdict, and the jurors apparently were comfortable enough to find the facts and apply the law so as to acquit Warner on three of the four counts charged on the indictment.  Thus, the court did not commit obvious error in the way it handled the process of allowing the jurors to decide when to proceed with the trial or in how it instructed the jurors regarding their deliberations.

The entry is:

Judgment affirmed.

Rory A. McNamara, Esq. (orally), Drake Law LLC, York, for appellant Daniel P. Warner

Marianne Lynch, District Attorney, and Mercedes Gurney, Asst. Dist. Atty. (orally), Prosecutorial District V, Bangor, for appellee State of Maine

Piscataquis County Unified Criminal Docket docket number CR-2020-23
FOR CLERK REFERENCE ONLY