MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2023 ME 70
Docket:      Ken-23-21
Argued:      September 13, 2023
Decided:     November 9, 2023

Panel:       STANFILL, C.J., and MEAD, JABAR, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.

STATE OF MAINE

v.

JARAE LIPSCOMBE

HORTON, J.

[¶1] Jarae Lipscombe appeals from a judgment of conviction of hindering apprehension or prosecution (Class B), 17-A M.R.S. § 753(1-B)(B)(1) (2023), entered by the trial court (Kennebec County, *Stokes, J.*) after a jury trial. He argues that (A) the court committed obvious error in allowing prosecutorial argument about the lack of evidence of certain witnesses' motives to lie and in instructing jurors that they could consider whether there was evidence that a witness had a motive to lie, and (B) the court abused its discretion in denying Lipscombe's motion to voir dire the jurors after learning that one witness said, "[G]ood luck," to the jurors while leaving the courtroom. We affirm the judgment.

# I. BACKGROUND

[¶2]  On October 5, 2021, the State of Maine charged Lipscombe by complaint with hindering apprehension or prosecution (Class B), 17-A M.R.S. § 753(1-B)(B)(1), based on allegations that he used deception to prevent or delay the discovery or apprehension of his brother in connection with the killing of a man in Waterville.  A grand jury indicted him on that charge on February 24, 2022.

[¶3]  After Lipscombe pleaded not guilty, the court held a jury trial on October 31 and November 1 and 2, 2022.  The State offered evidence that on June 6, 2020, Lipscombe had given the police a false description of a person running out of an apartment where a man had been shot and killed.  There was also testimony that when Lipscombe gave the description, he knew that the police investigating the crime were seeking that person.  Two witnesses authenticated, and the State played, video footage from security cameras in the vicinity of the crime shortly after it occurred showing a man who looked like Lipscombe's brother and did not fit the description Lipscombe had given.  An officer testified that he had encountered a man who was in the vicinity of the crime but did not detain him because he did not match the description that

Lipscombe had provided.  That man did match the later-obtained description of Lipscombe's brother.

[¶4]    Another witness testified that a man he later learned was Lipscombe's brother approached him in the same vicinity, gave a false name, asked to use his phone for an emergency, and rode off in a vehicle with someone who had come to get him.  A friend of Lipscombe's then testified that at Lipscombe's request, he had picked up Lipscombe's brother and allowed the brother to stay with him overnight on the night of June 6, 2020.  The State's final witness testified that Lipscombe had told her that his brother had shot a person and that Lipscombe had given the police a false description of the man who had fled the scene of the shooting.

[¶5]    After the State rested, Lipscombe unsuccessfully moved for a judgment of acquittal and presented no evidence.  During the State's closing argument, the prosecutor argued as follows:

> So, the Court is going to give you some suggestions about how you can evaluate different witnesses that you heard testify. You can consider all or none of them, that will be part of the jury instructions, but when it comes to [the witness who allowed Lipscombe's brother to use his phone] you might consider this. Whether a witness, or whether there has been any evidence to suggest that a witness had motive, or lack of motive to exaggerate or lie.  There is no such evidence for [this witness].  He is a true interloper in these events, just like [the witnesses who authenticated the video footage], he had no possible motive to try

to deceive you here, but [Lipscombe's brother] never would have made it past Columbia Road if [Lipscombe] hadn't misdescribed him delaying his apprehension.

Lipscombe raised no objection. The court later instructed the jury about how to consider witnesses' credibility:

You may consider whether the witnesses['] testimony was corroborated, which means supported, or contradicted by other testimony or by the exhibits. You may consider how well each witness has remembered what took place during the time periods in question. You may consider whether a witness had a good opportunity to make the observations he or she says were made. You may consider whether a witness appeared to be biased in favor of or against the State or the defendant. *You may consider whether there has been any evidence introduced of any motive or lack of motive for a witness to exaggerate or lie.*

(Emphasis added.) Lipscombe again raised no objection. The court also instructed, "The law never imposes upon a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence whatsoever. . . . [T]he burden of proof in this case is entirely on the State. The defendant does not have to prove anything. . . . Throughout the trial the defendant is favored with a presumption of innocence . . . ."

[¶6] The jury returned a verdict finding Lipscombe guilty. After discharging the jury, the court went to the jury room, in keeping with its usual practice, to thank the jurors off the record for their service and to accept questions and feedback about the trial. While speaking with jurors, the court

learned that several jurors had heard one of the State's witnesses—the friend of Lipscombe who had sheltered Lipscombe's brother on the night of the killing—mutter, "[G]ood luck," after his testimony as he was leaving the witness stand. The court promptly met with counsel in chambers on the record and disclosed what it had learned, indicating that the foreperson had said, "[I]t was insubstantial to us, so that's why I didn't mention anything." The court indicated that "not everyone heard it, pretty much the foreperson, the person next to him, I think maybe the one next to her, the first three in the row there, he muttered something under his breath, they thought it was good luck." When asked by defense counsel, the court confirmed that the jurors "thought it was being directed at them." The court said, "I know who [the jurors] are, we have the list of jurors if we ever—if there is anything you wanted to pursue." Defense counsel said he would "need to think about it," and when the court replied, "I don't know what that means, frankly," counsel said, "I can't imagine the voir dire would go anywhere."

[¶7] Three days later, Lipscombe filed a motion to voir dire the jurors to "determine the impact of this comment on [the jury's] verdict and deliberations." He filed an additional motion on December 14, 2022, seeking to "determine the impact" of the witness's comment. He argued that the statement

6

was extraneous information that would be prejudicial to the extent that the jury considered it in its deliberations. The State then moved to preclude juror testimony under Rule 606(b) of the Maine Rules of Evidence on the ground that the in-court utterance did not convey "information" within the meaning of the rule's narrow exception and that the jurors had merely observed a witness in court.

[¶8] Before Lipscombe's sentencing hearing on January 12, 2023, the court announced its ruling on Lipscombe's two motions and the motion filed by the State. The court denied Lipscombe's motion for voir dire of the jurors and granted the State's motion to preclude juror testimony. The court reasoned that it would not speculate what muttering "good luck" meant, and determined that the witness did not, through his comment, convey extraneous, prejudicial information to the jurors.

[¶9] The court then held the sentencing hearing and entered a judgment sentencing Lipscombe to five years in prison, with all but three years suspended and with three years of probation. The order also made him responsible for paying thirty-five dollars to the Victims' Compensation Fund. Lipscombe timely appealed. *See* 15 M.R.S. § 2115 (2023); M.R. App. P. 2B(b)(1).

## II. DISCUSSION

[¶10]   Lipscombe challenges (A) the court's inaction regarding the prosecutor's argument and its jury instructions about witnesses' motives to lie, and (B) the court's denial of Lipscombe's motion to voir dire the jurors after they delivered their verdict.  We consider each of his arguments in turn.

### A.   Closing Argument and Jury Instruction Regarding Evidence of a Motive to Lie

[¶11]   Lipscombe argues that the court committed obvious error in allowing a closing argument that implied that Lipscombe had a burden of proving that the State's witnesses had a motive to lie and delivering jury instructions that made the same implication.   As Lipscombe recognizes, because Lipscombe did not object to the prosecutor's argument or the court's instruction during trial, we review for obvious error.  *See State v. Warner*, 2023 ME 55, ¶ 13, 301 A.3d 763; M.R.U. Crim. P. 52(b).  "To show obvious error, there must be (1) an error, (2) that is plain, and (3) that affects substantial rights." *Id.* (quotation marks omitted).  "[E]ven if those three conditions are met, we will set aside a jury's verdict only if we conclude that (4) the error seriously affects the fairness and integrity or public reputation of judicial proceedings."  *Id.* (quotation marks omitted).  A statement that does not prompt an objection will rarely be found to have affected substantial rights because there is seldom, in

such circumstances, "a reasonable probability that it affected the outcome of the proceeding." *Id.* (quotation marks omitted).

## 1. Prosecutorial Error

[¶12]  We refer to "prosecutorial error" rather than "prosecutorial misconduct" because our "review focuses not on the prosecutor's subjective intent but on the due process rights of the defendant." *State v. White*, 2022 ME 54, ¶ 19 & n.9, 285 A.3d 262.  To decide whether a judgment should be vacated due to prosecutorial error, we first determine "whether error occurred, and, if there was error, we will then review the State's comments as a whole, examining the incidents of error both alone and cumulatively." *Warner*, 2023 ME 55, ¶ 14, 301 A.3d 763 (quotation marks omitted).

[¶13]  Although a prosecutor may "forcefully argue to the jury that the evidence does not support or is not consistent with the defendant's theory of the case," *State v. Cheney*, 2012 ME 119, ¶ 35, 55 A.3d 473, "[s]hifting the burden of proof to the defendant or suggesting that the defendant must present evidence in a criminal trial is improper closing argument," *Warner*, 2023 ME 55, ¶ 14, 301 A.3d 763 (quotation marks omitted).

[¶14]  Contrary to Lipscombe's contention, a prosecutor's reference to the lack or absence of evidence of a motive for a witness to testify falsely does

not inherently imply that the defendant has a duty or obligation to present evidence of motive. *See, e.g.*, *State v. Cummings*, 2023 ME 35, ¶¶ 23-25, 295 A.3d 1227. Moreover, the court's instructions that the State has the burden of proof and the defendant is not required to present any evidence to negate any such implication. *See Warner*, 2023 ME 55, ¶ 17, 301 A.3d 763. Accordingly, like other courts, we do not consider a prosecutor's comment on the lack of evidence of a witness's motive to lie to be error. *See, e.g.*, *United States v. Gracia*, 522 F.3d 597, 601 (5th Cir. 2008) ("A prosecutor may argue fair inferences from the evidence that a witness has no motive to lie . . . ."); *State v. Burton*, 778 A.2d 955, 967 (Conn. 2001) ("[T]he state may properly argue that the witnesses had no apparent motive to lie."); *cf. United States v. Wilkes*, 662 F.3d 524, 540 (9th Cir. 2011) ("[T]he argument that witnesses had no motive to lie is a permissible response to . . . attacks on the witnesses'[] credibility.").

[¶15] We have held that there was no prosecutorial error when the prosecutor asked, "What motive would there possibly be for [the victim] to recite to you anything other than what actually happened to her?" *Cummings*, 2023 ME 35, ¶¶ 23-25, 295 A.3d 1227 (quotation marks omitted). We held that the prosecutor could argue that the witness "did not testify to anything that suggested a motive for her to lie." *Id.* ¶ 25. On the other hand, in *Cheney,* we

held that it was improper for the prosecutor in closing argument to say that the defendant "d[id]n't have any evidence" to support his theory and that "they desperately want you to believe that somebody else hit [the victim] . . . . Yet, they have no evidence of it." 2012 ME 119, ¶¶ 16-17, 35, 55 A.3d 473 (quotation marks omitted). The statements in *Cheney* specifically linked the lack of evidence to the defendant and therefore violated the requirement "that the State avoid making any statement suggesting that a criminal defendant has any burden to disprove the charges against him or her." *Id.* ¶ 35.

[¶16] The prosecutor's argument here was similar to that in *Cummings*. The State elicited evidence that certain witnesses did not know anything about Lipscombe's brother before the events at issue but that they either encountered a man meeting his description on the day of the murder or had cameras that recorded footage of a man meeting his description near the scene. The prosecutor did not err in arguing that there was no evidence that these witnesses had a motive to lie, and the court did not commit obvious error in allowing that argument.

## 2. Jury Instructions on Witness Credibility

[¶17] Similarly, the court did not commit obvious error in instructing the jury that it could "consider whether there has been any evidence introduced of

any motive or lack of motive for a witness to exaggerate or lie." We considered this very issue in *Warner* and concluded that there was no obvious error in the court's delivery of the challenged instruction when it was delivered along with instructions that the State had the burden of proof, the defendant was presumed innocent, and the defendant did not have to prove anything or present any evidence. 2023 ME 55, ¶¶ 18-21, 301 A.3d 763. We reach the same conclusion here.

## B.    Denial of Motion for Voir Dire of Jurors

[¶18]  Lipscombe argues that voir dire was necessary to ensure that the off-the-record statement made to jurors by Lipscombe's friend as he was leaving the witness stand did not undermine the jurors' impartiality. Lipscombe further contends that the court improperly gathered information from jurors outside his presence and relied on juror representations not made under oath about how the comment, "good luck," affected them without allowing Lipscombe to voir dire the jurors. As a remedy, he seeks a remand for an evidentiary hearing. He contends that he preserved the claim of error by indicating that he would "think about it" and then moving to allow post-verdict voir dire.

12

[¶19]  We agree that Lipscombe preserved his argument by indicating that he would have to consider what the judge had told him and then filing a post-verdict motion, and we therefore review for an abuse of discretion the trial court's denial of Lipscombe's request for post-verdict voir dire.[1]  *See State v. St. Pierre*, 1997 ME 107, ¶ 10, 693 A.2d 1137.

[¶20]  We have long adhered to "the general rule . . . that the testimony of a juror is not available to impeach a verdict in which [that juror] participated."  *Patterson v. Rossignol*, 245 A.2d 852, 856 (Me. 1968).  This rule—now codified in Maine Rule of Evidence 606(b)—is grounded in policy considerations that include

> (1) the need for stability of verdicts; (2) the need to conclude litigation and desire to prevent any prolongation thereof; (3) the need to protect jurors in their communications to fellow jurors made in the confidence of secrecy of the jury room; (4) the need to save jurors harmless from tampering and harassment by disappointed litigants; [and] (5) the need to foreclose jurors from abetting the setting aside of verdicts to which they may have agreed reluctantly in the first place or about which they may in the light of subsequent developments have doubts or a change of attitude.

*State v. Leon*, 2018 ME 70, ¶ 8, 186 A.3d 129 (quotation marks omitted).

---

[1]  Although the exception based on outside influence, M.R. Evid. 606(b)(2)(B), was not explicitly argued in the written motions before the trial court, the court referenced the exception in its ruling, and Lipscombe challenges that ruling on appeal.

[¶21]  As it pertains here, Rule 606(b) of the Maine Rules of Evidence provides that "[d]uring an inquiry into the validity of a verdict or indictment, a juror may not testify about . . . [t]he effect of anything on that juror's or another juror's vote; or [a]ny juror's mental processes concerning the verdict or indictment." M.R. Evid. 606(b)(1)(B), (C).  There are two exceptions to this rule; these exceptions permit a juror to "testify about whether . . . (A) Extraneous prejudicial information was improperly brought to the jury's attention; or (B) An outside influence was improperly brought to bear on any juror." M.R. Evid. 606(b)(2).  These provisions are "substantially similar" to the corresponding federal rule, Fed. R. Evid. 606(b).  M.R. Evid. 606 Maine Restyling Note [November 2014].[2]  The federal rule included the exceptions to allow jurors "to testify as to matters other than their own inner reactions" because testimony about what happened—as opposed to jurors' internal thought processes—would "involve[] no particular hazard to the values sought to be protected" by Rule 606.  Fed. R. Evid. 606 advisory committee notes to 1972 proposed rules.

---

[2]  The Maine rule further narrows the circumstances in which a juror may be called as a witness because Maine has not adopted the federal "exception . . . for testimony about a mistake in entering the verdict on a verdict form."  M.R. Evid. 606 Maine Restyling Note [November 2014].

[¶22] As we have stated, Rule 606 embodies the law's strong disfavor for "inquiry into the deliberations of juries." *State v. Watts*, 2006 ME 109, ¶ 15, 907 A.2d 147. "Courts should inquire into the validity of a jury verdict only in very limited circumstances and should be very cautious in overturning jury verdicts." *Id.* ¶ 17 (citation and quotation marks omitted). "Only in the most extraordinary circumstances would a court inquire of a juror regarding deliberations." *State v. Robinson*, 2019 ME 46, ¶ 7 n.4, 205 A.3d 893.

[¶23] Such voir dire would be allowed only as an exception to the general prohibition against a juror testifying about "[t]he effect of anything on that juror's or another juror's vote" or the "juror's mental processes concerning the verdict or indictment." M.R. Evid. 606(b)(1)(B), (C). Exceptions to the rule against inquiring into a jury's deliberations are narrowly drawn, for instance to allow inquiry into "serious allegations of juror bias in the context of juror dishonesty or inaccuracy in answering a voir dire questionnaire." *Ma v. Bryan*, 2010 ME 55, ¶ 9, 997 A.2d 755 (quotation marks omitted); *see Watts*, 2006 ME 109, ¶ 17, 907 A.2d 147; *see also State v. Scott*, 2019 ME 105, ¶¶ 43-47, 211 A.3d 205 (identifying the importance of the exceptions to safeguard "[t]he Maine and federal constitutions['] guarantee that criminal defendants shall have the right to an impartial jury trial").

[¶24]  If the court engages in voir dire of the jury, the purpose is objective—to determine whether the jury was presented with improper extraneous prejudicial information or an improper outside influence—to enable the court to determine whether the probability of a prejudicial effect is sufficient to warrant setting aside the verdict.  *See* M.R. Evid. 606(b)(2)(A)-(B). The purpose is not to probe the actual, subjective effect of the extraneous information or outside influence on jurors; "[t]he judge is limited to deciding the *probability* of a prejudicial effect" because Rule 606 "prohibits inquiry in the *actual* effect of . . . irregularities on the minds of the jurors."  Field & Murray, *Maine Evidence* § 606.2 at 279 (6th ed. 2007) (emphasis added); *see* M.R. Evid. 606(b)(1)(B), (C).

[¶25]  If "[t]he record is entirely devoid of any indication that the jury reached its verdict on any improper basis" and there are no "verifiable external manifestations of such impropriety, we must accept the verdict as is." *Ma*, 2010 ME 55, ¶ 10, 997 A.2d 755 (quotation marks omitted).  We will generally accept the verdict when

> (1) there is no evidence in the record of any juror bias, prejudice, or misconduct; (2) there is no evidence to support a suggestion that the jurors failed to follow the law; and (3) the trial court, which saw the witnesses at the same time and place as the jurors, concluded that the verdict was supportable.

16

*Id.* ¶ 11.

[¶26]  Lipscombe argues in his brief that the court violated Rule 606(b)(1)(B) and (C) by "receiving a juror's testimony about '[t]he effect of anything on that juror's or another juror's vote' or '[a]ny juror's mental processes concerning the verdict . . . .'" We reject that contention outright—the record makes it clear that there was no juror "testimony" and that a juror volunteered the information when the court was thanking jurors for their service.  Thus, the court did not improperly inquire "into the validity of a verdict or indictment" in violation of Rule 606(b)(1).  The court instead acted appropriately by sharing the unsolicited disclosure with counsel immediately after receiving it.

[¶27]  Lipscombe's contention that the court should have conducted an evidentiary hearing after the disclosure calls for a more nuanced analysis.  He makes an argument under Rule 606 that the "good luck" comment was "[e]xtraneous prejudicial information," an improper "outside influence," or both.  M.R. Evid. 606(b)(2)(A), (B).

[¶28]  His primary argument, however, is that the comment generated a "colorable or plausible claim of juror partiality" that the court had an absolute duty to investigate.  Federal precedent holds that a defendant need only present

a "colorable or plausible claim" to trigger the trial court's "unflagging duty" to investigate. *United States v. French*, 904 F.3d 111, 117 (1st Cir. 2018) (quotation marks omitted). Even after a colorable or plausible claim has been presented, however, "[t]he type of investigation the [trial] court chooses to conduct is within the [trial] court's discretion; it may hold a formal evidentiary hearing, but depending on the circumstances, such a hearing may not be required." *Id.* "[T]he procedures used to investigate allegations of juror misconduct and the decision as to whether to hold an evidentiary hearing are matters which rest solely within the sound discretion of the [trial] court." *United States v. Jobe*, 101 F.3d 1046, 1058 (5th Cir. 1996) (quotation marks omitted). A trial court has "wide latitude in choosing appropriate means of investigating claims of juror bias," and the court should consider as a factor "the strength and seriousness of the allegations." *United States v. Gibson*, 353 F.3d 21, 26 (D.C. Cir. 2003) (quotation marks omitted) (holding that there was "no basis on which to second-guess the decision that observing the juror, rather than interrogating her, was an appropriate way to investigate [a] generalized . . . claim of bias" arising from the defendant's opinion about a juror's facial expressions). Thus, we will review the two exceptions at issue to determine whether there is, under either, a colorable claim that the "good luck"

18

comment deprived Lipscombe of an unbiased jury and whether the court abused its discretion in denying Lipscombe's request to voir dire the jurors.

### 1.    Exception for Extraneous Prejudicial Information

[¶29]   "A juror may testify about whether [e]xtraneous prejudicial information was improperly brought to the jury's attention."   M.R. Evid. 606(b)(2)(A). "When a defendant demonstrates that a juror was subjected to extraneous information and that the information is sufficiently related to the issues presented at trial, a presumption of prejudice is established, and the burden of proof shifts to the State to demonstrate by clear and convincing evidence that the information did not cause prejudice to the defendant." *State v. Coburn*, 1999 ME 28, ¶ 7, 724 A.2d 1239.  Information is extraneous if it is "information introduced to the jury from outside the normal deliberative process."[3]  *State v. Fuller*, 660 A.2d 915, 917 (Me. 1994) (quotation marks omitted).  "[T]o raise a presumption of prejudice to impose a burden of proof on the State, the extraneous information communicated to the juror must relate to the law or facts of the case."  *Scott*, 2019 ME 105, ¶ 47, 211 A.3d 205 (alteration and quotation marks omitted).

---

[3] "Information communicated among jurors during the deliberation process, however, is not considered to be extraneous, and may not be inquired into even if the information is improper. " *State v. Fuller*, 660 A.2d 915, 918 (Me. 1994).

[¶30]  The exception for extraneous prejudicial information was crafted in response to events such as

> the introduction into the jury room by a juror of a pamphlet containing the evidence given at a former trial; an independent probe by a juror of a defective road condition; a personal examination by a juror of a party's wool shop in relation to its location as to a stream and the possible pollution of the waters thereof; the secret investigation by a juror culminating in a private view of a cow and calf for purposes of comparison; [and] the use in the jury room of a book on principles of real estate appraising brought in by a juror.

*Patterson*, 245 A.2d at 856 (citations omitted); *see also Coburn*, 1999 ME 28, ¶ 16, 724 A.2d 1239 (holding that the presumption of prejudice had not been rebutted when a juror "went to an intersection and gathered additional facts about the scene of the events" at issue in the case and then shared the information with other jurors).

[¶31]  Here, the witness's comment was made in open court, but it was extraneous in that it was not noticed by the court or counsel and was therefore outside the ordinary trial process.  *See Gov't of V.I. v. Dowling*, 814 F.2d 134, 138 (3d Cir. 1987) ("A criminal defendant is entitled to a determination of his or her guilt by an unbiased jury based solely upon evidence properly admitted against him or her in court."); *Fuller*, 660 A.2d at 917-18.  However, the comment did not convey any information about the facts or law at issue in the case. *See Scott*,

2019 ME 105, ¶ 47, 211 A.3d 205; *see also St. Pierre*, 1997 ME 107, ¶¶ 11, 14, 693 A.2d 1137 (affirming a judgment of conviction where "the record reveal[ed] no evidence that any extraneous *information* reached the jury" (emphasis added)); *cf. People v. Rodriguez*, No. A128678, 2012 WL 4815082, at *5-7 (Cal. Ct. App. Oct. 10, 2012) (holding that further inquiry of jurors was not required when one juror had expressed concerns about seeing a co-defendant glare at and mouth words to a witness, but the juror said she had not discussed the matter with other jurors).

[¶32] Here, even though the court considered the witness's comment not to be extraneous, it still determined that the statement did not convey any information that would prejudice the jurors. Moreover, what the court heard during its meeting with jurors was sufficient to inform the court of what the witness said, making further inquiry into the content of the communication unnecessary, and there was no "colorable or plausible claim" that the comment contained extraneous information resulting in juror bias or other serious prejudice to Lipscombe. *French*, 904 F.3d at 117 (quotation marks omitted); *see Gibson*, 353 F.3d at 26; *Scott*, 2019 ME 105, ¶ 47, 211 A.3d 205. Voir dire would have not served any further purpose in any case, given that the only remaining questions were ones that the court could not ask: what subjective

reaction the comment produced in the jurors who heard it and whether it affected their mental processes in deliberations. *See* M.R. Evid. 606(b)(1)(B), (C); Field & Murray, *Maine Evidence* § 606.2 at 279. *See also Wilson v. Vt. Castings, Inc.*, 170 F.3d 391, 394 (3d Cir. 1999) ("The scope of the court's inquiry under Rule 606(b) is limited: the court may inquire only into the existence of the extraneous information. Once the existence of extraneous information has been established, the court may not inquire into the subjective effect of such information on the particular jurors.").

### 2. Exception for Improper Outside Influence

[¶33] "A juror may testify about whether . . . [a]n outside influence was improperly brought to bear on any juror." M.R. Evid. 606(b)(2)(B). Unlike the Rule 606(b)(2)(A) exception for extraneous prejudicial information, an outside influence need not incorporate information about the facts or law involved in the case. A threat that contains no information about the case but that is intended to intimidate jurors can constitute improper outside influence, for example. *See United States v. Jones*, 132 F.3d 232, 245 (5th Cir. 1998) ("An 'outside influence' refers to a factor originating outside of normal courtroom proceedings which influences jury deliberations, such as . . . a threat against a juror."), *aff'd*, 527 U.S. 373 (1999). Contact between a witness and a juror

outside the courtroom may also involve improper outside influence. *See* 3 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 6:19 (4th ed.), Westlaw (database updated Aug. 2023).

[¶34]  Although the comment at issue occurred inside the courtroom, it can be likened to contact outside the courtroom because the comment did not come to the attention of the court or the parties until after the verdict.  "'In a criminal case, any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial, if not made in pursuance of known rules of the court and the instructions and directions of the court made during the trial, with full knowledge of the parties.'"  *Scott*, 2019 ME 105, ¶ 45, 211 A.3d 205 (quoting *Remmer v. United States*, 347 U.S. 227, 229 (1954)).  "'The presumption is not conclusive, but the burden rests heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.'"[4]  *Id.* (quoting *Remmer*, 347 U.S. at 229).  To determine whether such contact is harmless, the

---

[4] As we acknowledged in *State v. Scott*, "'[t]he continuing validity of the presumption of prejudice standard articulated in *Remmer*, placing a special burden of persuasion on the prosecution, has been subject to question for some time.'"  2019 ME 105, ¶ 46, 211 A.3d 205 (quoting *State v. Cheney*, 2012 ME 119, ¶ 27, 55 A.3d 473, and citing *Smith v. Phillips*, 455 U.S. 209, 215-16 (1982) (addressing the opportunity to prove actual juror bias)).  Because we conclude in this case that no hearing was required, we do not opine on the parties' respective burdens if a hearing were held.

court must ascertain the content of the contact. *See id.* ¶ 49 (affirming the denial of a motion to voir dire a juror when the "misconduct had already come to light and was not shown to have affected the jury's verdict").

[¶35]  Applying these standards, a federal court held—before the Rules of Evidence were in place—that a reported conversation between a witness and a juror did create a presumption of prejudice when the trial court had not inquired to determine the nature and content of that conversation. *Richardson v. United States*, 360 F.2d 366, 368-69 (5th Cir. 1966).  As with extraneous prejudicial information, once the court has determined what occurred, the court's determination of whether juror contact amounts to an improper outside influence is objective. *See Wiser v. People*, 732 P.2d 1139, 1142–43 (Colo. 1987) (adopting an "objective test of whether there is a reasonable possibility that extraneous information or influence affected the verdict," consistent with the purposes of Rule 606(b) to protect juror privacy and "enhance the stability of jury verdicts").  Rather than probing the jury's subjective thoughts and feelings, the court "evaluat[es] the contact in light of logic and experience, and the likely reaction of a typical or reasonable juror."  3 Mueller & Kirkpatrick, *Federal Evidence* § 6:19.

[¶36]  In *Scott*, we held that no presumption of prejudice arose when a juror made comments to a family member of the accused and to a court officer "alluding to hoping to make the right decision, praying to make the right decision, et cetera," and acknowledging "the difficulty that the circumstances may have with various family members."  2019 ME 105, ¶¶ 41, 48, 211 A.3d 205 (quotation marks omitted); *cf. State v. Allard*, 557 A.2d 960, 961-62 (Me. 1989) (affirming the denial of a motion for a mistrial when the court's questioning of a juror in chambers revealed that "contact between the [witness] and the juror was brief and not concerned with the substance of the case").

[¶37]  Here, the court had no need to voir dire the jury to learn of the content of the communication—"good luck"—and nothing in the record suggests that the comment exerted any improper influence, or threatened the jurors.  The inquiry that Lipscombe requests would probe the jurors' "mental processes concerning the verdict"—the very thing that Rule 606 prohibits.  M.R. Evid. 606(b)(1)(C); *cf.* 3 Mueller & Kirkpatrick § 6:19 ("While juror testimony or statements can prove external contacts and can describe their nature, such evidence cannot be used to prove their effect . . . .").  Based on the objectively innocuous nature of the comment, Lipscombe has no "colorable" claim that the words "good luck" amounted to juror tampering or improper

influence that required voir dire examination of the jurors. *See French*, 904 F.3d at 117; *Scott*, 2019 ME 105, ¶¶ 41, 48, 211 A.3d 205.

[¶38] We conclude that the court did not abuse its discretion in denying Lipscombe's motion to voir dire the jurors after it made an objective determination that the witness's stray, innocuous, two-word comment having nothing to do with the facts of the case or applicable law did not affect the jury's ability to render a fair and impartial verdict.

The entry is:

Judgment affirmed.

---

Rory A. McNamara, Esq. (orally), Drake Law LLC, York, for appellant Jarae Lipscombe

Maeghan Maloney, District Attorney, Michael H. Madigan, Asst. Dist. Atty. (orally), and Mariah Wood, Stud. Atty., Prosecutorial District IV, Augusta, for appellee State of Maine

Kennebec County Unified Criminal Docket docket number CR-2021-20533
FOR CLERK REFERENCE ONLY