MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:       2025 ME 46
Docket:         Ken-23-455
Argued:         October 9, 2024
Decided:        June 3, 2025

Panel:          STANFILL, C.J., and MEAD, HORTON, CONNORS, LAWRENCE, and DOUGLAS, JJ.

STATE OF MAINE

v.

JARAE LIPSCOMBE

DOUGLAS, J.

[¶1]  A jury convicted Jarae Lipscombe of hindering apprehension or prosecution (Class B), 17-A M.R.S. § 753(1-B)(B)(1) (2025), based on actions that he took to delay or prevent the apprehension of his brother in connection with a homicide in Waterville for which his brother was later charged.  Five months after his conviction, Lipscombe moved for a new trial, asserting that his brother had been acquitted of murder and that evidence of the acquittal, if presented to a new jury, would probably lead to a different outcome in his own case.  The trial court (Kennebec County, *Stokes, A.R.J.*) denied the motion.  Lipscombe timely appealed.  We affirm the judgment because the acquittal of Lipscombe's brother is irrelevant to Lipscombe's conviction.

## I. BACKGROUND

[¶2]  On October 5, 2021, the State charged Lipscombe by complaint with hindering apprehension or prosecution, 17-A M.R.S. § 753(1-B)(B)(1), based on allegations that he intentionally "hinder[ed], prevent[ed] or delay[ed] the discovery, apprehension, prosecution, conviction or punishment" of his brother "for the commission of a crime" involving the death of a man in Waterville on June 6, 2020.  The complaint alleged that Lipscombe "knew of the conduct of [his brother] that in fact resulted in the charge of murder or a Class A crime or that in fact rendered [his brother] liable to such a charge."  A grand jury indicted Lipscombe on the same charge in February 2022, and he pleaded not guilty.

[¶3]  The court (*Stokes, J.*) held a three-day jury trial in October and November 2022.  Lipscombe's defense at trial focused on whether Lipscombe knew of any involvement by his brother in the homicide, suggesting that Lipscombe's brother may have fled the area for other reasons.  The State offered evidence, however, establishing the following:

- On June 6, 2020, Lipscombe gave police a false description of a person running out of an apartment where a man had just been shot and killed and claimed that he had never seen the person before;

- When Lipscombe gave police the false description, he knew that police investigating the crime were seeking that person;

- A man who resembled Lipscombe's brother (but did not fit the description given by Lipscombe) was later seen on video footage from a nearby security camera shortly after the shooting;

- Police stopped Lipscombe's brother in the vicinity of the crime shortly after it occurred but let him go because he did not fit the description of the fleeing suspect that Lipscombe had provided them;

- Lipscombe made arrangements for his brother to stay at a friend's house the night of June 6, 2020;

- Lipscombe confessed to a third party that he had witnessed his brother shoot the victim and that he (Lipscombe) had given police a false description of the person fleeing the scene of the shooting; and

- Lipscombe offered the third party money to retrieve the weapon from the place where his brother had disposed of it.

[¶4]  After the jury found Lipscombe guilty, he appealed the judgment, claiming prosecutorial error during the State's closing argument, error in the court's instructions, and error in denying a motion concerning alleged juror misconduct.  We affirmed the judgment of conviction.  *State v. Lipscombe*, 2023 ME 70, 304 A.3d 275.

[¶5]  On June 26, 2023, Lipscombe filed a motion for a new trial on the ground of newly discovered evidence.  *See* M.R.U. Crim. P. 33.  Lipscombe's motion asserted that his brother had been acquitted of murder and that the acquittal was probative evidence that (1) he (Lipscombe) may not have known of the conduct that made his brother liable for murder given that the State was

unable to prove that his brother committed the murder and (2) someone other than Lipscombe's brother may have committed the murder. Lipscombe argued that the newly discovered evidence, if presented to a jury, would probably result in a different verdict.

[¶6] On October 20, 2023, the court denied the motion, concluding that the subsequent acquittal of Lipscombe's brother "is not newly discovered evidence within the meaning of Rule 33 because it is not relevant to what the jury in [Lipscombe's] trial had to determine beyond a reasonable doubt."

[¶7] Lipscombe timely appealed.

## II.  DISCUSSION

### A.    Standard of Review

[¶8] A trial court may, upon motion of the defendant, grant a new trial "if required in the interest of justice." M.R.U. Crim. P. 33. At the same time, such motions are looked upon with "disfavor" because of "the need for finality and for the preservation of the integrity of criminal judgments." *State v. Twardus*, 2013 ME 74, ¶ 29, 72 A.3d 523 (quotation marks omitted). A defendant seeking a new trial predicated on newly discovered evidence must establish by clear and convincing evidence that

> (1) the evidence is such as will probably change the result if a new trial is granted;

(2) it has been discovered since the trial;

(3) it could not have been discovered before the trial by the exercise of due diligence;

(4) it is material to the issue; and

(5) it is not merely cumulative or impeaching, unless it is clear that such impeachment would have resulted in a different verdict.

*Id.* (quotation marks omitted). Here, factors (1) and (4) are at issue. We review the trial court's findings of fact for clear error and its determination of whether the defendant has met each factor for an abuse of discretion. *State v. Cookson*, 2003 ME 136, ¶ 28, 837 A.2d 101. We review for clear error the trial court's ruling on the evidentiary relevance of the judgment of acquittal. *See State v. Hassan*, 2013 ME 98, ¶ 21, 82 A.3d 86; *see also* M.R. Evid. 401 (stating that evidence is relevant if it has any tendency to make a fact of consequence to the determination of the action more or less probable than it would be without the evidence).

## B. Denial of Motion for New Trial

[¶9]  Lipscombe contends that the trial court erred or abused its discretion in finding that the judgment of acquittal in his brother's case was not relevant to whether he "knew of the conduct" that resulted in his brother being liable for murder and denying his motion for a new trial.

### 1.    Elements of Hindering Apprehension or Prosecution

[¶10]  Contrary to Lipscombe's suggestion that the State had to "prove something about murder," the statute defining the crime of hindering apprehension or prosecution contains no such requirement.   The statute provides:

> **1-B.**    A person is guilty of hindering apprehension or prosecution if, with the intent to hinder, prevent or delay the discovery, apprehension, prosecution, conviction or punishment of another person for the commission of a crime, the person:
> . . .
>
> **B.**    Provides or aids in providing a dangerous weapon, transportation, disguise or other means of avoiding discovery or apprehension and:
>
> > **(1)** The actor *knew of the conduct of the other person* that has in fact resulted in the charge of murder or a Class A crime or that has in fact rendered the other person liable to such a charge. Violation of this subparagraph is a Class B crime.

17-A M.R.S. § 753(1-B)(B)(1) (emphasis added).   As applied here, to find Lipscombe guilty of the charge, the jury had to find beyond a reasonable doubt that Lipscombe acted with the intent to hinder, prevent, or delay the discovery or apprehension of his brother; that he provided some means, or aided in providing some means, to his brother for avoiding discovery or apprehension; and that, at the time, Lipscombe knew that his brother had engaged in conduct

that "in fact resulted in the charge of murder" or "in fact rendered [his brother] liable to such a charge."[1]

[¶11]  Put another way, the State did not have to prove that Lipscombe knew on June 6, 2020, that his brother had been charged with murder, let alone would be convicted of murder.  The State was required to prove only that Lipscombe knew that his brother's *conduct* on that date was such that it could render his brother *potentially liable* to a charge of murder (or a Class A crime).  The State offered such evidence, including testimony that Lipscombe actually witnessed his brother shoot the victim and saw his brother flee from the scene.  The "fact" that Lipscombe's brother was eventually acquitted is not evidence that would tend to make the fact that Lipscombe knew about his brother's conduct on June 6, 2020, more or less probable.

---

[1] The State needed to prove that Lipscombe "knew of the conduct" of his brother only because the State charged Lipscombe with a Class B crime.  17-A M.R.S. § 753(1-B)(B)(1) (2025).  The State otherwise could have charged Lipscombe with a Class C crime based upon allegations that he provided aid to his brother with the intent to hinder his brother's apprehension, without having to establish that he knew of his brother's conduct.  *See id.* § 753(1-B)(B)(2).  Among the permutations of the hindering apprehension statute, the requirement that the State prove that the defendant "knew of the conduct of the other person" applies only in the most serious cases and only when the State seeks the imposition of a higher penalty upon conviction.  *Id.* § 753; *see also* 17-A M.R.S. § 1604(1) (2025) (setting the maximum terms of imprisonment for crimes other than murder); Model Penal Code & Commentaries § 242.3 cmt. 6 at 238-39 (Am. L. Inst. 1980) (stating that a higher classification may be warranted in cases of hindering apprehension where the defendant knows that the conduct in which the other person has engaged is among the most serious proscribed by law).

## 2. Subsequent Judgment of Acquittal

[¶12]   We turn to Lipscombe's primary contention, namely that his brother's subsequent acquittal on the murder charge in 2023 is probative evidence of the conduct that Lipscombe witnessed in 2020.  Specifically, Lipscombe contends that a fact finder at a new trial for hindering apprehension could draw an inference from his brother's acquittal of murder that Lipscombe may not have witnessed murderous conduct by his brother given the ultimate finding reached by the fact finder in his brother's case.

[¶13]   The argument falls of its own weight.  Contrary to Lipscombe's contention, no such inference may properly be drawn from his brother's subsequent acquittal.  Lipscombe told the third party that his brother and the victim were arguing and that his brother pulled out a gun and "shot the guy." The brother's conduct, which Lipscombe witnessed, was by its nature such that it would "in fact render[ ] [his brother] liable" to a charge of murder or a Class A crime, regardless of the eventual legal consequences of the conduct.  17-A M.R.S. § 753(1-B)(B)(1).  In other words, the subsequent judgment of acquittal did not erase the factual circumstances surrounding the conduct that occurred, and that Lipscombe witnessed, on June 6, 2020.  The judgment of acquittal signifies only that a particular fact finder determined that the State failed to meet its

burden of proving beyond a reasonable doubt each element of the crime charged. The Supreme Court of Colorado expressed this point concisely:

> There may be a murder committed in fact and still the state may not be able legally to establish it for the purpose of the imposition of a penalty on the murderer. A verdict of acquittal does not establish a status of innocence. Innocence, while it entitles one to an acquittal, is not always present where a verdict of not guilty is returned. If the jury has a reasonable doubt of guilt under all the evidence, even if defendant is in fact guilty, it is its duty to acquit. Innocence is a factual status. Nonliability to account resulting from acquittal is a legal status. The guilt o[r] innocence of an accessory after the fact depends as to one element on the factual status of the principal as to guilt or innocence; not on his legal status as regards liability or nonliability to suffer a penalty.

*Roberts v. People*, 87 P.2d 251, 255 (Colo. 1938).

[¶14] The jury in Lipscombe's case had to decide whether Lipscombe knew of his brother's conduct on June 6, 2020, based on the evidence presented in Lipscombe's case and whether that conduct was of the kind that "in fact rendered the other person liable" to a charge of murder. 17-A M.R.S. § 753(1-B)(B)(1). The resolution of Lipscombe's brother's case in his favor is not probative of whether Lipscombe knew of his brother's conduct on June 6, 2020. *See Ferrell v. Commonwealth*, 743 S.E.2d 284, 288-89 (Va. Ct. App. 2013). It therefore was neither material to the issue of Lipscombe's guilt nor likely to change the result of Lipscombe's trial. *See Twardus*, 2013 ME 74, ¶ 29, 72 A.3d 523. The trial court did not err in finding that the judgment of acquittal in

Lipscombe's brother's case was not relevant to any fact of consequence in Lipscombe's trial for hindering apprehension, *see* M.R. Evid. 401, and the trial court therefore did not abuse its discretion by denying Lipscombe's motion for a new trial. *See State v. Peaslee*, 2020 ME 105, ¶ 23, 237 A.3d 861 (concluding that a trial court properly denied a motion for a new trial when the newly discovered evidence would not have been admissible); *State v. Preston*, 521 A.2d 305, 307 (Me. 1987) (stating that newly discovered evidence that would be inadmissible at a new trial cannot change the result).

The entry is:

Judgment affirmed.

Rory A. McNamara, Esq. (orally), Drake Law LLC, York, for appellant Jarae Lipscombe

Maeghan Maloney, District Attorney, and Michael H. Madigan, Asst. Dist. Atty. (orally), Kennebec County District Attorney's Office, Augusta, for appellee State of Maine

Kennebec County Unified Criminal Docket docket number CR-2021-20533
FOR CLERK REFERENCE ONLY